**Al MAY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 13906.

United States Court of Appeals
Sixth Circuit.

July 11, 1960.

Louis Lusky, Louisville, Ky. (Marvin H. Morse, and Herbert L. Segal, Louisville, Ky., on the brief), for appellant.

Robert D. Simmons, Asst. U. S. Atty., Louisville, Ky. (Wm. B. Jones, U. S. Atty., and Charles E. Peyton, Asst. U. S.

Atty., Louisville, Ky., on the brief), for appellee.

Before MILLER, WEICK and O'SULLIVAN,* Circuit Judges.

O'SULLIVAN, Circuit Judge.

Appellant Al May appeals from his conviction of perjury (Sec. 1621, Title 18 U.S.C.). The perjury charged arose from his testimony at a hearing before a National Labor Relations Board trial examiner. May was an organizer for the United Hatters, Cap and Millinery Workers International Union, AFL–CIO. For some time prior to December 20, 1957, the mentioned Union had been attempting to organize the employees of the Louisville Cap Company, and had established a picket line at the plant of that company. On December 20, 1957, while these efforts were continuing, upon petition of the employer, a representative election was held. The result of the vote was 150 for no Union and 4 in favor of the Union in question. Notwithstanding the election result, the Union continued its picket line, resulting in a complaint being filed by the NLRB charging that, by maintaining the picket line and other activities, the Union was guilty of unfair labor practices, within the meaning of Sec. 8(b) (1) (A) of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (1) (A). Among other charges set forth in the complaint issued by the NLRB, was that since December 20, 1957, the date of the election, the Union had picketed the plant of said company, "for the purpose of forcing the Charging Parties (the company) to recognize and bargain with it as the exclusive representative of the Charging Parties' employees." This averment, as well as other averments of the complaint, was denied by defendant Union. Hearings on the NLRB complaint were had before a trial examiner in August and September, 1958. Prior to the time of these hearings, the NLRB had handed down its decision in the case of N. L. R. B. v. Drivers, Chauffeurs and Helpers Local 639, etc., AFL–CIO, and Curtis Brothers, Inc., 119 NLRB 232 (referred to herein as the Curtis case). That decision had held that it was an unfair labor practice for a Union that had lost an election to continue maintaining a picket line for "recognitional purposes". The construction placed upon the Curtis decision by the Union as of the time of the hearing before the trial examiner in the Louisville Cap Company case, is stated in appellant's brief as follows:

"For present purposes, it is sufficient to say that the NLRB there held that a union which has lost a collective bargaining election is thereby barred from all picketing (at least until another election can take place a year later) unless it also engages in additional efforts to organize the plant by such methods as handbill distribution and personal solicitation of employees."

In its defense to the NLRB charges in the Louisville Cap case, the Union asserted and offered evidence to show that it was, at the same time it was maintaining a picket line, engaging in other organizational efforts. Appellant's brief states this as follows, "the Union (while not conceding the validity of the Curtis rule) offered evidence to show that it had, in fact, engaged in such additional organizational efforts." The perjury charge against appellant May consisted of his testimony before the examiner that while the Union was maintaining a picket line after the election, he, as organizer for the Union, was carrying on solicitation of various employees of the Louisville Cap Company in an effort to get them to join the Union. He swore that he had visited some nine women employees of the company as a part of this effort, and gave their names and addresses.

The indictment charged that his testimony in this regard was false. Eight of the nine women named by appellant were

---

* On the day of the oral argument in this case, Judge O'SULLIVAN was a District Judge, sitting by designation. He was sworn in as a Circuit Judge on April 4, 1960.

produced as witnesses for the government on the perjury trial, and each testified that appellant had never visited her as he had testified. The individual claims of four of these witnesses that appellant had not visited them were, to some extent, corroborated by evidence referred to later in this opinion.

The examiner's Intermediate Report and Recommended Order entered December 12, 1958, found the Union guilty of unfair labor practices because of its continued picketing after losing the election (finding that the picketing was for recognitional purposes) and because of other conduct of the Union and its members, not necessary here to detail. On March 16, 1959, the indictment charging appellant with perjury was returned. A jury trial was had on March 30 and 31, 1959, and defendant was convicted.

On November 26, 1958, the United States Court of Appeals for the District of Columbia reversed and set aside the order of the NLRB in the Curtis case (Drivers, Chauffeurs and Helpers Local Union No. 639, etc. v. N. L. R. B., 107 U.S.App.D.C. 42, 274 F.2d 551) holding that Sec. 8(b) (1) (A) of the National Labor Relations Act did not proscribe peaceful picketing, "whether organizational or recognitional". On April 2, 1959, the NLRB adopted and approved the trial examiner's report and order in the Louisville Cap Company case (123 NLRB Reports, No. 74) refusing to acquiesce in the aforesaid decision of the District of Columbia Court of Appeals in the Curtis case. The NLRB decision in the Louisville Cap case is now pending on appeal in the District of Columbia Court of Appeals. On March 28, 1960, the Supreme Court affirmed the decision of the District of Columbia Court of Appeals in the Curtis case, N. L. R. B. v. Drivers, Chauffeurs, Helpers Local, etc., 362 U.S. 274, 80 S.Ct. 706, 4 L.Ed.2d 710.

This appeal, in the main, presents for consideration application of the rule that perjury must be established by two witnesses, or by one with corroboration, and the rule that false testimony, to amount to perjury, must have been material to the issues involved in the hearing at which it was given.

Appellant assigns numerous grounds for reversal, three of which we will initially discuss. He contends:

a) That his motion for directed verdict of acquittal should have been granted because, he claims, there was not quantitatively sufficient evidence by two witnesses, or by one witness with corroboration, of his claimed false swearing.

b) That the court erred in refusing to instruct the jury that the mentioned rule was to be applied separately to each factual component of the alleged false testimony, e. g.,

"That is to say, for example, that if the only evidence of the falsity of some particular statement is the testimony of a single witness, you must find that said statement has not been proved to be false even though one or more other witnesses may have testified to the falsity of other statements alleged to have been made by defendant under oath."

c) That the testimony of defendant, given at the NLRB hearing, even if false, was not material. This is so, he says, because the Court of Appeals and the Supreme Court have now decided, in the Curtis case, that, at the time of the events here involved, peaceful picketing "for recognitional purposes" was not illegal—therefore, the Union's attempt to establish that its picketing of the Louisville Cap Company was part of an organizational effort was unnecessary to its defense and appellant May's testimony given in support of that defense was immaterial.

a) *The two-witness rule:*

■■ The rule which bars a conviction of perjury on the uncorroborated testimony of a single witness, notwithstanding criticism of it, remains applicable to trials in Federal Courts. Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 550, 89 L.Ed. 495. We hold, however, that defendant in this case was not deprived of its protection. His perjury, if any, consisted of testimony given on

one occasion in connection with one hearing, and upon a single issue involved in that hearing. On his oath, he said that he had visited some nine different women as part of his organizational effort on behalf of his Union. He contends that the testimony of eight of these women, each of whom asserted that he testified falsely when he said he had visited her, does not satisfy the requirements of the rule. No one of the eight directly corroborated the testimony of any other that she, the other, was not visited by May. Therefore, there was only one direct witness to the falsity of each component of his allegedly false testimony, taken in isolation from the whole. To hold, however, that the standard of proof required to establish perjury must be met as to each separated fragment of testimony given in response to an inquiry upon a single subject would be an unwarranted extension of the rule. The issue on appellant's trial was whether, when testifying before the trial examiner, he gave false testimony as to the extent and character of his organizational activity. Eight witnesses said that he did. We think the requirement of the rule was satisfied. The reason for the rule is stated in Weiler v. United States, supra, as follows:

> "Since equally honest witnesses may well have differing recollections of the same event, we cannot reject as wholly unreasonable the notion that a conviction for perjury ought not to rest entirely upon 'an oath against an oath'".

In the case at Bar, the government's charge that the defendant committed perjury was not limited in its evidentiary support to, "an oath against an oath," but was supported by eight oaths against the one taken by May when sworn as a witness at the NLRB hearing.

The rationale of the two-witness rule was stated by the Delaware Supreme Court in the case of Marvel v. State, 3 W.W.Harr. 110, 131 A. 317, 318, 42 A.L. R. 1058, as follows:

> "Almost every case upholding the rule has given as its reason for so

holding that otherwise there would 'only be oath against oath'; that the oath of the defendant alleged to be perjured is measured against that of the prosecuting witness; that the scale of evidence is thus poised; and the equilibrium ought to be destroyed by material and independent circumstances before the defendant should be convicted."

Wigmore discusses and finds unsound appellant's contention.

> "Moreover, the corroboration is required for the perjured fact as a whole, and not to every detail or constituent part of it." Wigmore, (3 Ed.) VII, § 2042, p. 280.

Wigmore cites several cases to support the above text. In Rex v. Curry, 12 D.L. R. 13, a charge of perjury arose from a sworn statement of one Curry that two persons had collaborated in offering and paying him a bribe in connection with his vote at an election. One McDonald, he claimed, proposed the bribe and directed him to McPherson who paid it. Curry said he saw these two persons separately at different places on the day of the alleged bribe. McDonald and McPherson, on Curry's trial for perjury, denied seeing him on the day in question. The accused there, similarly to appellant's position here, contended that McDonald and McPherson did not corroborate each other, and the testimony of two witnesses needed to convict him of perjury was lacking. Affirming Curry's conviction, the court said:

> "The contention of the accused is that there is no corroboration as to any one of the essential facts necessary to justify his conviction. The learned county court judge held, and I think rightly, that the whole evidence given by the accused at the inquiry must be looked at, and that considering the whole, there was sufficient corroboration. It will be noted that the accused himself is responsible for the whole statement made before the Commissioner, in which he connected McDonald and McPherson with one act, the attempt

to bribe him for his vote at the election. The Crown, by two witnesses, proved that no part of his testimony before the Commissioner was true. It is true the Crown witnesses could not testify to each part of the alleged false testimony, but the effect of their evidence was to shew that a transaction which, as sworn to, was necessarily connected with each, was not true as to either of them."

The Curry case, as well as Wigmore, cited an English authority, Regina v. Roberts, 2 C & K 607, 614, where the Court said:

"There need not be two witnesses to prove every fact necessary to make out an assignment of perjury. If the false swearing be that two persons were together at a certain time, and the assignment of perjury that they were not together at that time, evidence by one witness that at the time named the one was at London, and by another witness that the other was at York, would be sufficient proof."

Two Kentucky cases are in point here. In Goins v. Commonwealth, 167 Ky. 603, 181 S.W. 184, 186, the charge of perjury arose from the accused's testimony that he had not, within a certain period of time, sold any whiskey to several named persons. On his trial for perjury, two of the persons thus named swore that the accused had, within the time mentioned, sold them whiskey. The Kentucky Court of Appeals, affirming conviction, said:

"Therefore, where the alleged false oath relates to two or more facts and one witness contradicts the accused as to one fact and another witness as to another fact, the two witnesses corroborate each other in the fact that the accused swore falsely, and their testimony will authorize a conviction."

In Commonwealth v. Davis, 92 Ky. 460, 18 S.W. 10, 11, the accused was charged with perjury in that upon his trial for peddling without a license he testified he had not seen or been at the home of either of two persons. These persons, on the perjury trial, testified that the accused had been at their homes. Sustaining conviction, the Court said:

"In this instance he swore in the same oath that he had not been at the house of either witness. One of them testified that he had been at her house; the other said he was at hers; and beyond doubt, the evidence of one corroborated the other, not in the fact that he had been at the particular house, but that he had sworn falsely."

Federal courts have ruled against the contention of appellant here. In United States v. Palese, 3 Cir., 133 F.2d 600, the accused was tried for perjury bottomed upon a claim that he had falsely sworn he did not pay any persons for voting at an election. Two persons testified that he had offered, or paid, bribes to them. Neither knew of, or attempted to support, the testimony of the other as to the bribe. The Court said, at page 602:

"But the payment to Wheatley, the individual, was not the crucial fact. Mrs. Jackson's testimony, if believed, did tend, as did Wheatley's, to establish the fact that the defendant did pay persons for voting. It, therefore, was sufficient to corroborate the only material fact established by Wheatley's testimony, namely, that the defendant's assertion that he had not paid any person for voting was false."

In United States v. Seavey, 180 F.2d 837, 839, the Third Circuit followed its previous decision, saying:

"It should be borne in mind that what the defendant is being prosecuted for here was not the giving or taking of bribes, but an alleged perjured statement that he had never made any payments on behalf of his employer to a given group of persons. Two witnesses testified, each to a different payment. The defendant has, therefore, been proved a perjurer by the testimony of two witnesses just as he was in the Palese case to which we adhere."

We are of the opinion that there was sufficient evidence to go to the jury and denial of the motion for acquittal was proper.

b) *Refusal of instruction:*

■ What we have said above disposes of appellant's contention that his proffered instruction that the standard of proof required by the corroboration rule was to be applied separately to each factual part of appellant's testimony. We should, however, point out here that the trial judge did instruct the jury, generally, as to the standard of proof necessary to convict the appellant of perjury. He charged:

"Now, this being a charge of perjury, it is incumbent upon the Government to establish, again to the exclusion of a reasonable doubt, the falsity of the statements set forth in the indictment, the falsity of the statements alleged to have been made by the defendant under oath, by the testimony of two independent witnesses or one witness and strong and clear corroborating circumstances, and unless that has been done, you must acquit the defendant."

To corroborate the testimony of two of the eight women claimed by May to have been visited by him, their husbands gave testimony to the effect that at the time of the alleged visits, they and their respective wives were not living at the addresses given by May. As to another of these eight women, records of the Indiana Employment Security Office were offered to show that such woman was in Indiana at the time of the alleged visit to her in Kentucky. Appellant attacks the sufficiency of this evidence as corroboration. We are satisfied that the evidence so offered was relevant and material, and we need not consider whether, standing alone, it would have been sufficient as corroboration in view of our holding that evidence of the eight women witnesses could be considered by the jury on the subject of corroboration.

c) *Materiality of the false testimony:*

■ The false testimony of appellant was offered by the Union to support its contention that at the same time that it was picketing the Louisville Cap Company plant, its representatives, including May, were continuing with organizational efforts. The NLRB complaint charged that the respondent Union, notwithstanding its loss of the election of December 20, 1957, "picketed, and are picketing, the charging parties' plant (Louisville Cap Company) for the purpose of forcing charging parties *to recognize and bargain with it * * *.*" The Union denied these charges in its written answer, thus making an issue as to whether its picketing was, or was not, solely for the purpose of forcing recognition of the Union. The false testimony was given to support the Union's defense on the issue thus framed. It was given as a part of the Union's effort to persuade the trial examiner that the Union was, at the time of the picketing, engaged in organizational efforts. The effort was to influence the trial examiner's decision upon the question of whether the picketing being conducted was, or was not, proscribed by Section 8(b) (1) (A) of the National Labor Relations Act, in the light of the then view of the NLRB of applicable law.

The appellant here argues that his testimony was immaterial because it has now been held by the Supreme Court on final decision in the Curtis case (N. L. R. B. v. Drivers, Chauffeurs & Helpers Local 639, etc., & Curtis Bros., Inc., supra) that peaceful picketing for recognitional purposes was not, at the time here involved, violative of the mentioned section of the National Labor Relations Act. He says that his false testimony in attempting to show that his Union's picket line was a part of an organizational effort and not for recognitional purposes was, in view of the final Curtis decision, part of an unnecessary defense. We point out, however, that had the Union been successful in proving, through appellant May, that its picket line was a part of, and concurrent with, organizational efforts, it would have established a good defense to the NLRB complaint, unaided by the law now announced by the Curtis case.

**562**

■ The question of whether or not false testimony was upon a material issue, is determined as of the time the testimony was given.

"In testing materiality of testimony charged to be false, reference must be had to the issue as it existed when the oath was administered to the witness." 70 C.J.S. Perjury § 11, pp. 466, 467.

"The fact that the false testimony was unnecessary to accomplish the end in view will not render it immaterial." 70 C.J.S. Perjury § 11, p. 467.

In this case, the NLRB had jurisdiction to hear the complaint which was the foundation of the hearing before the examiner. Other charges, such as intimidation, threats of violence, etc., were involved. Had the examiner believed the testimony of appellant, he could have, in reliance upon it, exonerated the respondent Union from any unfair labor practice in connection with the picket line, solely upon the conclusion that the continued picketing was part of an organizational effort. The Union's defense, if sustained by proofs, was a good defense at the time it was offered. The fact that the NLRB decision in the Louisville Cap Company case may be, and at the time of this writing may have been, reversed by the Court of Appeals is not, in our opinion, of importance.

In West v. United States, 6 Cir., 258 F. 413, 416, the false testimony of an accused, given to resist an injunction being sought, was held to be material, notwithstanding that upon appeal the granting of the injunction was reversed and the cause dismissed, because the appeal court found that the district court should have dismissed the case for lack of the necessary diversity of citizenship. Judge Knappen, speaking for this court, after referring to the general rule that perjury cannot be predicated upon a false oath given in a proceeding before a court which had no jurisdiction to inquire into the matter, stated as follows:

"To this general rule there are a number of limitations, as, for example, where a court has jurisdiction of the subject matter and of the parties, and the testimony given is material to the inquiry then before the court, false swearing is perjury, although the proceedings may be so irregular or erroneous as to require reversal on appeal. * * * and perjury may be committed on a trial under an indictment which is afterward held insufficient. * * *"

In the case of State v. Berliawsky, 106 Me. 506, 76 A. 938, an accused perjurer insisted that his false testimony was immaterial because, apart from the testimony which was false, he had asserted another valid defense to the action. In sustaining his conviction, the Supreme Court of Maine in its prepared syllabus stated:

"Where the party actually sets up such claim for money loaned in defense by way of set-off, and testifies in support of it, the fact that he need not have done so because of another available defense does not make the claim immaterial matter."

■ We repeat that the defense which involved the false testimony of May was but one defense that could have been made to the complaint of the NLRB, and had it succeeded, it would have been a good defense without reference to the present view of the law as announced by the Supreme Court in the Curtis case.

"The actual effect of a false statement has no bearing on its materiality, and the guilt of one who has falsely sworn does not depend upon the result of the proceedings in which it occurred. It does not lie with the perjurer to say that if he had sworn the truth, the case for other reasons would have failed; * * * Conversely, the fact that the case is won in spite of defendant's false testimony will not render the testimony immaterial." 48 C.J., Perjury, § 36, pp. 835, 836.

"But any statement which is relevant to the matter under investigation is sufficiently material to form the basis of a charge of perjury.

The test of materiality is whether a false statement can influence the tribunal—*not whether it does*" (Emphasis added). 48 C.J., Perjury, § 33, p. 833.

While the following decisions are not factually parallel with the case at Bar, they sustain, in principle, our conclusion that appellant's false testimony was upon a material matter. United States v. Larocca, 3 Cir., 245 F.2d 196, 199; United States v. Goldstein, 2 Cir., 168 F.2d 666; United States v. Slutzky, 3 Cir., 79 F.2d 504, 506; United States ex rel. Darcy v. Superintendent of County Prisons, 3 Cir., 111 F.2d 409, 411.

d) *Sufficiency of the indictment:*

■ Before trial defendant moved to dismiss the indictment, claiming that it failed to state facts constituting an offense, and, as an alternative, charging that the one count indictment joined several distinct offenses, moved that the government be required to elect to prosecute on one of the offenses so charged. These motions were denied.

The indictment was sufficient. It charged all elements of the crime of perjury as defined by the statute (Sec. 1621, Title 18 U.S.C.) reciting in adequate detail facts which, if proved, would constitute the offense charged. It fully informed the defendant of the case which his plea of not guilty put in issue. We find no fault in it.

■ For the reasons set forth in our above discussion of the standard of proof in perjury cases, we are satisfied that the language of the indictment described one act of perjury. It was not necessary that there be a separate count as to each woman identified by appellant in his statement that he had visited nine women in carrying on his organizational effort for the Union. Arena v. United States, 9 Cir., 226 F.2d 227; Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905.

e) *Other assignments of error:*

Appellant charges that other errors were committed upon the trial. We have carefully reviewed and considered the events and rulings which make up the background to the several additional charges of error. We are satisfied that none of them are meritorious.

Judgment affirmed.