**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Ronald CARABBIA, Defendant-Appellant.
No. 17011.**

United States Court of Appeals
Sixth Circuit.

July 31, 1967.

---

Frank V. Moran, Jr., and John J. Kane, Jr., Cleveland, Ohio, for appellant.

Philip R. Michael, Atty., Dept. of Justice, Washington, D. C. (Fred M. Vinson, Jr., Asst. Atty. Gen., William S. Lynch, Brian P. Gettings, Richard A. Buckley, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before PHILLIPS and PECK, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

Ronald Carabbia, defendant-appellant, was convicted in the United States District Court for the Northern District of Ohio, Eastern Division, on a charge of filing a false United States Treasury Department form. The indictment upon which he was convicted reads as follows:

"The Grand Jury charges:

"That on or about the 30th day of June, 1962, at Youngstown, Ohio, in the Northern District of Ohio, Eastern Division, RONALD CARABBIA, unlawfully, willfully and knowingly made and subscribed a United States Treasury Department Form 11–C Special Tax Return and Application for Registry-Wagering, for the period July 1, 1962 to June 30, 1963 which was verified by a written declaration that it was made under the penalties of perjury, which said Form 11–C Special Tax Return and Application for Registry-Wagering he did not believe to be true and correct as to every material matter in that the said Form 11–C Special Tax Return and Application for Registry-Wagering stated that the defendant, RONALD CARABBIA, had two employees and/or agents receiving wagers in his behalf, whereas, as he then and there well knew and believed he had a greater number of employees and/or agents receiving wagers in his behalf.

"In violation of Title 26, Section 7206(1), United States Code."

The defendant-appellant was tried before a jury, found guilty and sentenced to three years' imprisonment and to pay a

fine of $5000. The defendant-appellant, hereinafter referred to as defendant, then appealed.

Pending this appeal counsel for the defendant filed a motion.

"* * * for an order requiring the United States Department of Justice to examine its files in connection with the investigation and prosecution of the above case to determine whether the defendant-appellant has been subject to electronic surveillance or wire tapping by either representatives of the United States Department of Justice or the Intelligence Division of the Internal Revenue Service or any other agency of the United States Government, and report to the Court, under oath, whether there has been any such invasion of privacy in violation of the Constitution of the United States."

Counsel for the government admitted

"* * * that a microphone had been placed in business premises apparently under the control of defendant and his brother. The microphone was in operation from January 22, 1962, until March 22, 1962. The conversations overheard were monitored by agents of the Federal Bureau of Investigation. Logs were kept in which appear summaries of the conversations overheard."

We remanded the case to the District Court with instructions to conduct a prompt and full hearing upon all aspects of the government's use of electronic equipment and to make findings of fact and report to this Court. (See copy of order hereto attached as Appendix A.) The district judge conducted a hearing and reported to this Court its findings of facts and conclusions of law. The district judge concluded that electronic surveillance of the defendant was not used in any way in the trial of this case.

We have examined a transcript of the testimony at the hearing before the district judge and confirm his findings of facts and conclusions of law. (Copy of the findings of facts and conclusions of law is attached hereto as Appendix B.) The case having been submitted to the Court on briefs and oral arguments of counsel, we proceed to decide the appeal on its merits.

We consider first the claim that the indictment does not state an offense. The indictment of the Grand Jury is based on Section 7206(1),[1] Title 26, U.S. C. Section 4412(a) (1), (2), Title 26, U.S.C. provides for registration in connection with the imposition of a tax on wagers under Sections 4401 and 4411, Title 26, U.S.C., and reads as follows:

"(a) Each person required to pay a special tax under this subchapter shall register with the official in charge of the internal revenue district—

"(1) his name and place of residence;

"(2) if he is liable for tax under subchapter A, each place of business where the activity which makes him so liable is carried on, and the name and place of residence of each person who is engaged in receiving wagers for him or on his behalf."

Treasury regulations Sections 44.6071.1 and 44.4412–1 were promulgated by the Commissioner to implement the statute on registration. Regulation 44.6071.1(b) provides that initially when one desires to enter into the business of accepting wagers he must file a Form 11–C beginning with the first day of the calendar month in which he expects to engage in such business and ending with the following June 30th.

"Thereafter, each return required to be made on Form 11–C shall be filed on or before July 1 to cover a 1-

---

1. "Any person who—
 "(1) Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter * * * shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more ·than 3 years, or both, together with the costs of prosecution."

year period (beginning July 1 and ending June 30 of the following calendar year) during which taxable activity continues."

Regulation 44.4412–1(b) (2) provides:

"Each person engaged in the business of accepting wagers on his own account shall report on Form 11–C the name and address of each place where such business will be conducted and the name, address, and number appearing on the special (occupational) stamp of each agent or employee who may receive wagers on his behalf. Thereafter, a return shall be filed on Form 11–C, marked 'Supplemental,' each time an additional employee or agent is engaged to receive wagers. Such supplemental return shall be filed not later than 10 days after the date such additional employee or agent is engaged to receive wagers and shall show the name, address, and number appearing on the special (occupational) stamp of each such agent or employee. As to a change of address, see Section 44.4905–2."

Questions 5(b) and (c) of Form 11–C require the applicant to state the number of persons *engaged* in receiving wagers on his behalf and the name, address and tax stamp number for each such person.

Section 6065, Title 26, U.S.C. provides that any return or declaration required to be made under any provision of the revenue laws "shall contain or be verified by a written declaration that it is made under the penalties of perjury." Section 7206(1) under which this offense is prosecuted makes it an offense to make a false declaration.

◼ The basis of the defendant's claim that the indictment does not state an offense is that he is charged with falsifying as to future events. This is a misinterpretation of the statute, the regulations and the allegations of the indictment. The indictment charges the defendant with a violation in the language of the statute alleged to be violated. See Hoover v. United States, 358 F.2d 87 (C.A. 5), cert. den. 385 U.S. 822,

87 S.Ct. 50, 17 L.Ed.2d 6; United States v. Chunn, 347 F.2d 717 (C.A. 4). Form 11–C, which is the subject of the offense charged, is a renewal application to enable the defendant to continue in business for the ensuing governmental fiscal year. The indictment charges that the defendant committed an offense on June 30, 1962, in that he declared in Form 11–C that at that time he had only two employees or agents receiving wagers in his behalf, when he well knew and believed that at that time he had more than two employees receiving wagers on his behalf. Future employees would be reported by filing a supplemental Form 11–C. The government's case would fail unless it proved beyond a reasonable doubt that the defendant had more than two employees receiving wagers on his behalf on June 30, 1962.

We find no merit to the defendant's argument that the meaning of Section 7206 (1) and the Regulations is vague. We conclude that the indictment states an offense.

Counsel for the defendant claim that the trial judge erred in not inquiring of the jurors on voir dire examination, upon request, if they had any prejudice by reason of the defendant being engaged in the gambling business.

◼ The conduct of the voir dire examination is discretionary with the trial judge. In Aldridge v. United States, 283 U.S. 308, at p. 310, 51 S.Ct. 470, at p. 471, 75 L.Ed. 1054, the Court said:

"In accordance with the existing practice, the questions to the prospective jurors were put by the court, and the court had a broad discretion as to the questions to be asked. The exercise of this discretion, and the restriction upon inquiries at the request of counsel, were subject to the essential demands of fairness."

See also United States v. Dennis, 339 U.S. 162, 168, 70 S.Ct. 519, 94 L.Ed. 734, rehearing den. 339 U.S. 950, 70 S.Ct. 799, 94 L.Ed. 1364; Johnson v. United States, 270 F.2d 721 (C.A. 9), cert. den. 362 U.S. 937, 80 S.Ct. 759, 4 L.Ed.2d 751; Stone

v. United States, 324 F.2d 804 (C.A. 5), cert. den. 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659; United States v. Barra, 149 F.2d 489 (C.A. 2).

██ The question before us is whether the trial judge abused his discretion. The judge began his voir dire examination by reading the indictment to the jury. This was sufficient to inform the jurors that the defendant was engaged in the business of receiving wagers. Thereafter he conducted an extensive examination in which he cautioned the jurors against being prejudiced or predisposed to judgment. After explaining fully what was meant by prejudice, the jurors responded to a question that they had no prejudice. The jurors were asked whether they "or any members of their immediate family ever applied for or held a Federal wagering tax stamp." Upon reading the transcript of the voir dire examination, we conclude that the jurors were fully informed as to the nature of the case, that they were fairly examined as to prejudices and predisposition to judgment and that the trial judge did not abuse his discretion in refusing to ask a specific question suggested by counsel.

Another claim made on behalf of the defendant is that the trial judge erred in denying motions for acquittal where the prosecution did not prove perjury by the testimony of two witnesses or the testimony of one witness and corroborating evidence. This question was not specifically raised before the trial court by the motions of counsel for the defendant at the close of the government's evidence and at the close of all of the evidence at the trial. However, we proceed to discuss the question.

The defendant is not charged with perjury as defined by Section 1621, Title 18, U.S.C. The substance of the offense created by this statute is the swearing falsely under oath taken either orally or subscribed to in writing before a person or tribunal competent to administer an oath in a matter in which a law of the United States authorizes an oath to be administered. Admittedly the two-witness rule is applicable to charges of perjury prosecuted under this statute. Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495; May v. United States, 280 F.2d 555 (C.A. 6)

██ No oath is involved in the statute under which the defendant is prosecuted. The gist of the crime with which the defendant is charged is willfully making a declaration in a document under the pains and penalties of perjury which the declarant does not believe to be true as to every material matter. This section of the Code is more nearly analogous to Section 1001, Title 18, U.S.C., than it is to Section 1621. Section 1001 cases do not require the testimony of two witnesses or the testimony of one witness and corroborating evidence. United States v. Killian, 246 F.2d 77 (C.A. 7); Fisher v. United States, 231 F.2d 99 (C.A. 9). It is only essential that guilt be established beyond a reasonable doubt.

██ We are of the opinion, however, that the two-witness rule is met even though not required. In considering motions for acquittal or for a directed verdict, the court must view the evidence in the most favorable light to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, rehearing den. 315 U.S. 827, 62 S.Ct. 629, 86 L.Ed. 1222; United States v. Conti, 339 F.2d 10 (C.A. 6). The testimony of William Gaul is to the effect that he and the Kosco brothers, Andy and George, were writing numbers for the defendant on June 30, 1962, the critical time in issue. It is claimed that Gaul's testimony is not supported by any other witness or by other independent corroborating evidence. We have examined the trial transcript and conclude that there is sufficient evidence, when viewed in the most favorable light to the government, from which the jury could infer that Gaul and the Kosco brothers were writing numbers for the defendant at the time he made the application for a wagering stamp in question.

In addition there is the testimony of the defendant himself in which he admits that Gaul turned in wagers to him throughout the period in question.

"Q Did Willie Gaul continue to turn in to you after July 1st?

"A Yes, he gave me what he didn't want after July.

"Q The same as before July? He would come in there and give you slips and money?

"A Yes.

"Q And right up until the end of the time that you went out of the numbers business?

"A Yes, he told me he was getting his own stamp, and I took it for granted he had a stamp.

"Q He continued to turn in his numbers to you?

"A Yes, sir."

When the defendant offered evidence in his own behalf, after the government closed its case, which supplied any evidentiary defect in the government's case, he waived his contention of a failure of proof on the part of the government. United States v. Goldstein, 168 F.2d 666 (C.A. 2). The defendant seems to reason that he would have some immunity if Gual had his own stamp and turned in to him only such numbers as Gaul did not want. We find no support for this theory. Everyone writing numbers whether principal or agent is required to have a stamp. Gaul's stamp listed the defendant as principal. The defendant claimed that he had not authorized this and did not know it. This was a fact for the jury to determine from all of the circumstances in the case.

Another assignment of error is the refusal of the trial judge to give the defendant's requested instruction No. 6 relative to the element of willfulness in a felony case.

The requested instruction reads as follows:

"Before you can find the defendant guilty, you must be satisfied beyond a reasonable doubt that he acted willfully, that is intentionally, knowingly, and *with an evil mind and bad purpose.*" (Emphasis added.)

The trial judge, in his instructions, defined willfully, as follows:

"To do an act willfully, as used in the statute, means that the act was committed by the defendant voluntarily, with knowledge that it was prohibited by law, and *with the purpose of violating the law and not by mistake, accident or in good faith.*" (Emphasis added.)

A trial judge is not required to give a requested instruction if the subject matter of the instruction is substantially covered in the judge's general charge. United States v. Donovan, 339 F.2d 404 (C.A. 7), cert. den. 380 U.S. 975, 85 S.Ct. 1338, 14 L.Ed.2d 271; Davis v. United States, 226 F.2d 331 (C. A. 6), cert. den. 350 U.S. 965, 76 S.Ct. 432, 100 L.Ed. 838, rehearing den. 351 U.S. 915, 76 S.Ct. 693, 100 L.Ed. 1449. We consider that a "purpose of violating the law and not * * * in good faith" is substantially the same as "evil mind and bad purpose." A purpose to violate a criminal statute is a bad purpose and one who contemplates doing so intentionally has an evil mind. The trial judge might well have given the instruction as requested but we find that he gave the substance of it in his general charge and that he was not in error in refusing it.

It is assigned as error that the trial judge, by his cross-examination of witnesses, and comments to defendant's counsel in the presence of the jury improperly conveyed to the jury the impression that the judge was interested in a conviction of the defendant.

Counsel for the defendant refer to three separate and isolated instances where the trial judge made some comment to counsel in passing on objections. We do not consider that these comments reflected the judge's interest in the case or that they were prejudicial to the defendant.

The district judge questioned prosecution witnesses as follows: Andrew Kosco to the extent of ten pages of the transcript, William Gaul, four pages, Leo Ferranti, two pages, and John Relic on rebuttal, one question. In each instance he gave counsel an opportunity to ask additional questions. We said in Knapp v. Kinsey, 232 F.2d 458, 466, cert. den. 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86;

> "The trial judge in the federal court is more than a mere arbitrator to rule upon objections and to instruct the jury. It is his function to conduct the trial in an orderly way with a view to eliciting the truth and to attaining justice between the parties. It is his duty to see that the issues are not obscured and that the testimony is not misunderstood. He has the right to interrogate witnesses for this purpose."

See also Glasser v. United States, supra; United States v. Brandt, 196 F.2d 653, 655 (C.A. 2).

 We do not look with favor on extensive examination of witnesses by the trial judge in a jury trial. We do not find in this case, however, that the judge abused his discretion in this respect or that his questioning of witnesses constitutes prejudicial and reversible error. See United States v. Lewis, 338 F.2d 137, cert. den. 380 U.S. 978, 85 S.Ct. 1342, 14 L.Ed.2d 272.

Finally, it is claimed that the defendant acted on the advice of a special agent of the Internal Revenue Service and that the evidence necessary to sustain a conviction was assembled by making use of the fruits of the agent's misdirection. It is contended that the jury should have been instructed that if they find this to be a fact they should return a verdict of not guilty. We find no evidence to support this claim and conclude that it is without merit.

The judgment of the District Court is affirmed.

## APPENDIX A

### ORDER

Before: PHILLIPS and PECK, Circuit Judges, and CECIL, Senior Circuit Judge.

This cause is before the Court on motion of defendant-appellant, Ronald Carabbia,

> " * * * for an order requiring the United States Department of Justice to examine its files in connection with the investigation and prosecution of the above case to determine whether the defendant-appellant has been subject to electronic surveillance or wire tapping by either representatives of the United States Department of Justice or the Intelligence Division of the Internal Revenue Service or any other agency of the United States Government, and report to the Court, under oath, whether there has been any such invasion of privacy in violation of the Constitution of the United States."

on Memorandum of the Assistant Attorney General stating facts as follows:

> " * * * that a microphone had been placed in business premises apparently under the control of defendant and his brother. The microphone was in operation from January 22, 1962 until March 22, 1962. The conversations overheard were monitored by agents of the Federal Bureau of Investigation. Logs were kept in which appear summaries of the conversations overheard."

and on memorandums of the parties with respect to the dismissal of defendant-appellant's motion and the disposition of the disclosure of electronic eavesdropping by the government.

Upon consideration of the motion of the defendant-appellant, the memorandum of disclosure by the government and the memorandums of the parties with respect thereto,

It is hereby ordered that the case be remanded to the District Court with

instructions to conduct a prompt and full hearing upon all aspects of the government's use of electronic equipment in the premises of the defendant-appellant and determine its effect upon the trial and conviction of the defendant-appellant and whether or not a new trial should be granted or the indictment dismissed.

It is further ordered that the district judge make a finding of fact and report to this Court which will retain jurisdiction of the Appeal.

## APPENDIX B

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
(Filed May 29, 1967.)

Pursuant to an order entered by the Sixth Circuit Court of Appeals on February 23, 1967, this Court ordered that a hearing be commenced on April 5, 1967, to investigate all aspects of the Government's use of electronic listening equipment in the premises of the defendant-appellant. Prior to the commencement of this hearing, namely on March 24, 1967, the Government presented to the Court the original and one copy of certain logs which it represented to be the complete and only original records of what was overheard by the electronic surveillance which was disclosed by the Government to the Sixth Circuit Court of Appeals.[1] On the instruction of the Court, an Assistant United States Attorney delivered a copy of these logs to defense counsel on March 29, 1967, under a protective order which permitted the disclosure of the contents thereof by defense counsel only to the extent that they in good faith believed it necessary in order to prepare for the April 5, 1967, hearing. Defense counsel, evidently believing the protective order to be too restrictive, refused to accept the logs at that time.[2] On April 5, 1967, the Court, in order to expedite the hearing, revoked the protective order and, once again, had a copy of the logs delivered to defense counsel.

On the basis of the evidence introduced at the hearing conducted from April 5, 1967, to April 10, 1967, the Court makes the following findings of fact.

1. The listening device involved in the electronic surveillance of the defendant was a battery powered microphone installed on January 22, 1962, at the Modern News Center, 620 Youngstown-Poland Road, Struthers, Ohio, and connected by means of commercial telephone lines to the Youngstown, Ohio office of the Federal Bureau of Investigation (hereafter FBI). Several days after its installation, when the connection with the commercial telephone lines had been completed, the device was monitored on a spot check basis. Commencing January 31, 1962, logs were kept of the monitoring of the conversations overheard by means of the device. Logs were kept until March 19, 1962, and the device was discontinued on March 22, 1962.

---

1. The logs were presented to the Court pursuant to a request made at an informal pretrial conference held on March 24, 1967. Counsel for the defendant states that the Court "refused" to rule on certain discovery requests made at that conference. It should be pointed out, however, that the Court did not "refuse" to rule on counsel's requests; rather, there was general agreement that a ruling on the discovery requests might best be deferred until counsel for the defendant had an opportunity to review the logs.

2. The Court is of the opinion that defense counsel acted unreasonably and arbitrarily in refusing to accept the logs. Even assuming that there was reason to believe that the protective order was unduly restrictive—a position which appears to be entirely without merit—the soundest course of action would have been to accept the logs, study them carefully, and thereafter seek a modification of the protective order in the event counsel thought it necessary. The Court, since it had not reviewed the logs before turning them over, obviously had no way of knowing what they contained by way of relevant information. When counsel argues, as he did in this case, that the order might restrict even his perusal of the logs, he argues outside the realm of reason.

2. The procedure employed by the FBI in monitoring the aforesaid device was substantially as follows: Agents of the FBI were assigned to the FBI's Youngstown Office to listen through earphones to the sounds which were emanating from the Struthers, Ohio address. They were directed to make entries in their logs of the discernible and intelligible conversations overheard during the monitoring period. The device was monitored at random times when personnel were available. The log entries would consist, as far as possible, of a verbatim transcription of that which was overheard. These logs were and are the only records of the conversations which were listened to by the agents. No tapes or sound recordings were made.

3. The Government has produced all of the logs which were made pursuant to the above-described monitoring procedure.

4. The Government provided and made available all of the individuals who participated in the monitoring of the above-described device or had anything to do with the listening process during the pertinent period. On the basis of the testimony of these individuals, the Court finds that all the information obtained by means of the monitoring device between January 31 and March 19, 1962, is reflected in the logs presented to the Court. No records were made in connection with the spot check monitoring which occurred prior to January 31, 1962.

5. Defendant Ronald Carabbia did not participate in any of the conversations which were overheard or listened to by the FBI.

6. The only information which was obtained by the Internal Revenue Service as a result of the FBI's monitoring of the premises of the defendant is set out in Court's Exhibits 4, 4a and 4b. The Internal Revenue special agent who investigated the charges which led to this prosecution received no investigative leads to this prosecution from the electronic device installed at the Modern News Center, 620 Youngstown-Poland Road, Struthers, Ohio, and he did not discuss this case or information obtained from the monitoring with any agent of the FBI.

7. The information contained in the logs is totally irrelevant to any of the issues raised during the trial.

8. None of the conversations overheard during the spot check monitoring which occurred prior to January 31, 1962, were relevant to any of the issues raised during the trial.

9. Nothing overheard or disseminated from the listening device did or could have lead, either directly or indirectly, to any evidence introduced in the course of the prosecution of this case.

10. The Government disclosed the electronic surveillance of the defendant's premises in accordance with the policy set forth in the Government's supplemental memorandum to the Supreme Court in Schipani v. United States, 385 U.S. 934, 87 S.Ct. 293, 17 L.Ed.2d 214; 385 U.S. 965, 87 S.Ct. 501, 17 L.Ed.2d 431. Implicit in the Government's disclosure of such surveillance is a representation on the part of the Government that there was no other electronic surveillance of the defendant. At the hearing, the Internal Revenue special agent who had charge of the investigation which lead to this prosecution testified that there was no other electronic surveillance of Mr. Carabbia. The Court finds that the only electronic surveillance of the defendant was that discussed in findings of fact Nos. 1 through 9.[3]

3. Counsel for Mr. Carabbia attempted during the course of the hearing to undertake a widescale, independent investigation of various governmental agencies in an effort to uncover further electronic surveillance. Taking into consideration the language of the Sixth Circuit Court of Appeals' order and the circumstances set out in this finding of fact, the Court deemed that such efforts on the part of defense counsel constituted nothing more than an unwarranted stab in the dark and, therefore, did not allow counsel to pursue the same.

## CONCLUSIONS OF LAW

The Court concludes, upon an inquiry into all aspects of the Government's use of electronic equipment in the premises of the defendant that:

1. Since none of the information overheard by the monitoring of the microphone at the Modern News Center, Struthers, Ohio was used as evidence or as leads to evidence admitted at the trial, there would be no basis for suppressing any of the evidence which was used in the prosecution of this case.

2. The Court concludes, therefore, that there is no basis for ordering a new trial in this case and that the judgment of conviction should stand.

/s/ FRANK J. BATTISTI
United States District Judge