**NATIONAL DAIRY PRODUCTS COR-
PORATION, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 18737.

United States Court of Appeals
Eighth Circuit.

Oct. 27, 1967.

Rehearing Denied Nov. 21, 1967.

John T. Chadwell, Chadwell, Keck, Kayser, Ruggles & McLaren, Chicago, Ill., of Chadwell, Keck, Kayser, Ruggles & McLaren, for appellant, Richard W. McLaren, Chicago, Ill., and Martin J. Purcell, Morrison, Hecker, Cozad & Morrison, Kansas City, Mo., on the brief.

Howard E. Shapiro, Atty., Dept. of Justice, Washington, D. C., for appellee, Lawrence G. Meyer and Raymond P. Hernacki, Dept. of Justice, Washington, D. C., on the brief.

Before V A N O O S T E R H O U T, MATTHES and MEHAFFY, Circuit Judges.

MATTHES, Circuit Judge.

National Dairy Products Corporation (National) was convicted on seven counts of an indictment charging a conspiracy to fix prices and eliminate competition in the sale of milk in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and on six counts charging price discrimination in violation of Section 3 of the Robinson-Patman Act, 15 U.S.C. § 13(a). We affirmed the judgment of conviction. National Dairy Products Corporation v. United States, 350 F.2d 321 (8th Cir. 1965).

On the first appeal National contended that the district court had committed prejudicial error in denying defense counsel the right to inspect selected portions of the grand jury testimony utilized by the prosecution for refreshing the recollection of certain government witnesses. Considering the posture of the law at that time we found no error in the denial. 350 F.2d at 330–333. On June 20, 1966 the Supreme Court granted National's petition for certiorari, vacated the judgment of this Court and remanded the case to the district court "for further consideration in light of Dennis v. United States," 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), decided on the same date. National Dairy Products Corp. v. United States, 384 U.S. 883, 86 S.Ct. 1913, 16 L. Ed.2d 995 (1966).

Upon remand, after consideration of briefs and oral argument, the district court denied National's motion for a new trial and reentered its judgment. The court's lengthy and exhaustive opinion is reported at 262 F.Supp. 447 (W.D.Mo. 1967).

National has appealed. Basically it contends that under the teachings of Dennis the district court erred in failing to grant a new trial on all counts. We reverse as to counts eleven, twelve and thirteen and affirm the judgment as to the remaining counts.

Inasmuch as the procedure adopted and utilized at the trial in connection with the use of the grand jury testimony has been fully discussed in opinions of the district court [1] and our prior opinion, we limit our discussion of that procedure to the bare essentials.

It stands undisputed that the government's use of the grand jury testimony was limited to the attempted refreshment of seven government witnesses in connection with the so-called Kansas City charges. (Counts eleven, twelve and thirteen).[2] The refreshment procedure formulated by the district court was tacitly agreed to by counsel for National. They did, however, move repeatedly and unsuccessfully to inspect those portions of the grand jury transcript utilized by the government, and all other portions relating to the same subject matter. 350 F.2d at 330.

In considering and denying National's motion for a new trial upon remand, the district court concluded on the basis of its interpretation of Dennis that National had failed to demonstrate a "particularized need" for its use of the grand jury testimony.[3] The district court ob-

---

1. See United States v. National Dairy Products Corp., 231 F.Supp. 663 (W.D. Mo.1964), denying appellants' post-trial motions for judgment of acquittal notwithstanding the verdict and in the alternative for a new trial; United States v. National Dairy Products Corporation, 262 F.Supp. 447 (1967), denying National's motion for a new trial on remand.

2. Counts eleven and twelve alleged Sherman Act violations; count thirteen alleged a Robinson-Patman Act violation.

3. The district court found: (1) National did not attempt to show, and did not contend at trial, that it had established any "particularized need"; (2) the grand jury testimony was not used for impeachment purposes or introduced as substan-

viously premised its conclusion on the dissimilarity between this case and the five circumstances present in *Dennis* which the Supreme Court held constituted a showing of particularized need "substantially beyond the minimum required by Rule 6(e) and the prior decisions of this Court." 384 U.S. at 872–873, 86 S. Ct. at 1850.

We believe the district court misinterpreted the standard established by *Dennis,* which is applicable to this case.

Unlike the situation in this case, the prosecution in *Dennis* did not utilize the grand jury transcript at trial. The defense, however, moved for the production of the grand jury testimony of certain prosecution witnesses for impeachment purposes. The motions were denied on the ground that no "particularized need" had been shown. The Court of Appeals found no reversible error. 346 F.2d 10 (10th Cir. 1965).

In a unanimous opinion as to this issue the Supreme Court reversed and remanded, and held that the defendants were entitled to examine the grand jury transcript relating to the trial testimony of four government witnesses.

Speaking for the Court Mr. Justice Fortas pointed out that the Supreme Court has on several occasions recognized the " 'long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts.' United States v. Procter & Gamble Co., 356 U.S. 677, 681, 78 S.Ct. 983, 2 L.Ed.2d 1077, [and] * * * has ruled that, when disclosure is permitted, it is to be done 'discretely and limitedly.' Id. at 683, 78 S. Ct. at 987." 384 U.S. at 869, 86 S.Ct. at 1848. He emphasized, however, the fact

that the Supreme Court "has confirmed the trial court's power under Rule 6(e) of the Federal Rules of Criminal Procedure to direct disclosure of grand jury testimony 'preliminarily to or in connection with a judicial proceeding.' " Id., at 869–870, 86 S.Ct. at 1849.

Of greater significance to our case is the Court's statement based on United States v. Procter & Gamble Co., supra at 356 U.S. 683, 78 S.Ct. 983, that " 'problems concerning the use of the grand jury transcript at the trial to impeach a witness, *to refresh his recollection,* to test his credibility * * * ' are 'cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly.' " Id., 384 U.S. at 870, 86 S.Ct. at 1849. [Emphasis added.] The Court also observed that the developments in the area of disclosure of grand jury minutes were entirely consistent with the realization that disclosure, rather than suppression of relevant legal materials, normally promotes the proper administration of criminal justice. Of added significance, we feel, is the fact that the Court cited the Jencks Act, 18 U.S.C. § 3500, as indicative of the trend towards liberal disclosure. Id., at 870–871, 86 S.Ct. 1840.

We refrain from a prolonged discussion of other significant pronouncements of the Court in *Dennis.* Manifestly the Supreme Court has substantially liberalized the standards to be applied in determining whether disclosure is required. In relaxing these requirements, we are led to believe that in a case where, as here, the government is permitted at trial to use the grand jury transcript, the discretionary power of the district court to limit disclosure is restricted.[4]

tive evidence; (3) the refreshment witnesses were evasive, reluctant to testify, and hostile to the government; (4) there was no inconsistency between any government witness' trial testimony and his grand jury testimony; (5) the charges could be proved exclusive of the testimony given by the refreshment witnesses, and the guilt or innocence of National did not turn on the testimony of these witnesses; (6) National did not suffer any prejudice as a result of the court's rulings on the grand jury transcript;

(7) the nondisclosure of the grand jury transcript was not reversible error *per se,* but assuming *arguendo* that error was committed, it was harmless error under Rule 52 of the Federal Rules of Criminal Procedure.

4. The Court recognized that *in camera* inspection by the trial judge may be useful for certain purposes, but that it by no means disposes of the matter. The Court stated: " * * * In our adversary system, it is enough for judges to

We interpret *Dennis* as enunciating the proposition that where the district court permits the government to use the grand jury transcript to refresh the recollection of certain government witnesses, a showing of particularized need has been made, and upon request the trial judge must grant the defense counsel the right to inspect that portion of the transcript used and other portions relating to the same subject matter.

In our view the Supreme Court in *Dennis* considered the circumstances of that case for the purpose of demonstrating that a defendant may show that a particularized need exists for disclosure even though the transcript had not been used at trial or inspected by the trial judge *in camera*.

Post-*Dennis* decisions lend support to our views. In United States v. Youngblood, 379 F.2d 365 (2d Cir. 1967), the grand jury transcript had not been utilized by the government. The district court had refused to grant defense counsel the right to inspect the grand jury testimony of a key government witness. The Second Circuit held that tested by the criteria laid down in *Dennis* Youngblood's showing of particularized need was substantially weaker than that made by the defendants in *Dennis*. Under these circumstances the refusal of the trial court to order disclosure did not constitute error. That Court nevertheless recognized the propriety and fairness of allowing the disclosure of the grand jury testimony of key prosecution witnesses, and consequently directed that at trials commencing after its judgment in *Youngblood* had been entered, the district courts of that Circuit at the request of the defendant should order the disclosure of the grand jury testimony of those witnesses who testified at his trial without requiring a showing of any particularized need.

Cargill v. United States, 381 F.2d 849 (10th Cir. 1967), presented the question whether defense counsel were entitled upon motion to inspect the grand jury testimony of a key government witness where that testimony was not used by the government at the trial.

The Tenth Circuit interpreted the *Dennis* opinion as abrogating the substance while retaining the form of the particularized need requirement. It adopted a course of wide open disclosure, subject to a protective order, whenever the defense makes a specific request for a transcript of the witnesses' grand jury testimony to be used in his cross-examination or for one of the other purposes mentioned in *Dennis*. In reversing Cargill's conviction the court stated *inter alia:*

> "The Court [in *Dennis*] retains the requirement that 'particularized need' be shown in order that the secrecy may be lifted, but holds *in effect* that such need is shown when the defense states that it wishes to use the transcript for the purpose of impeaching a witness, to refresh his recollection, or to test his credibility. Thus the Court as far as cross-examination is concerned has removed most, if not all, of the substance from the particularized need requirement, although it has retained the term. Under this opinion, it appears that the defense is entitled to the grand jury transcript of the witness's testimony when the jury's functions are ended, and when the request is made during the course of trial that it is necessary for the purpose of cross-examining such witness for the above mentioned purposes." 381 F.2d at 851.

Worthy v. United States, 383 F.2d 524 (D.C.Cir. 1967), is factually similar to *Cargill* in that the district judge refused to permit defense counsel to examine the grand jury testimony for possible incon-

---

judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate. The trial judge's function in this respect is limited to deciding whether a case has been made for production, and to supervise the process: for example, to cause the elimination of extraneous matter and

to rule upon applications by the Government for protective orders in unusual situations, such as those involving the Nation's security or clearcut dangers to individuals who are identified by the testimony produced. Cf. Fed.Rule Crim. Proc. 16(e), as amended in 1966; 18 U.S.C. § 3500(c)."

sistencies between the testimony of a government witness before the grand jury and at trial. Following remand by the Supreme Court for further consideration in light of *Dennis*, the district court denied the motion for a new trial, holding that while there had been an apparent showing of "particularized need" under the standards of *Dennis*, the defendant had not been prejudiced by the government's nondisclosure.

The Court of Appeals in a per curiam opinion reversed and remanded, and held that the defendant was prejudiced by his inability to examine the grand jury transcript for inconsistencies between the witness' grand jury and trial testimony. The Court, moreover, concluded that the circumstances in *Worthy* were sufficient to require disclosure under a showing of particularized need.

We do not regard the holding in *Dennis* to require the practice adopted by the Second Circuit in *Youngblood*, supra. Neither do we subscribe to the concept that the defense is entitled to the grand jury transcript upon timely request irrespective of the circumstances involved which seems to be the rule established for the Tenth Circuit in *Cargill*, supra. We believe a showing of "particularized need" under the *Dennis* standards is still required. We hold only that where the prosecution itself has used the grand jury testimony during the course of the trial, that fact in itself is sufficient to constitute a showing of particularized need. Otherwise, a showing of particularized need depends upon the circumstances of each case.

 Thus defendant, National Dairy, has established a particularized need for disclosure of the pertinent grand jury testimony that was utilized by the government and related grand jury testimony. Consequently we conclude that the court committed prejudicial error in denying the defense the right to inspect such grand jury testimony, but that such error affects only counts eleven, twelve and thirteen.

With respect to the Sherman Act counts, the jury was instructed that each count charged a separate conspiracy, and that evidence relating to one Sherman Act count could not be considered in support of the charge under any other Sherman Act count, except on the issue of intent. This solitary exception permitted the jury when considering one of the Sherman Act counts to also consider evidence of any earlier occurrences pertaining to another Sherman Act count "which * * * [it] might find would bear also upon National's intent in the count under consideration." Focusing upon this instruction, National argues that the error of the district court in denying it the right to limited inspection spilled over and infected all of the counts in the indictment, and thereby deprived it of a fair trial on the question of intent, a central issue in all counts. We disagree.

We are cited to no authorities in support of this contention. Neither do National's briefs state with any specificity wherein the refreshment process produced any damaging intent evidence. In this connection we notice that on the former appeal National did not rely upon the "intent" aspect of the refreshment process as ground for a new trial on all counts.[5] Rather its contention, abandoned on this appeal, was that the prosecution had resorted to the grand jury testimony as substantive evidence, not to refresh the recollection of its witnesses, but to impeach them.

The record, moreover, is replete with instances wherein the Court and counsel for all parties recognized the limited thrust of the government's action in re-

---

5. Counsel for National filed two post-trial motions for judgment of acquittal n.o.v. or in the alternative for a new trial. One motion was addressed to "counts one through ten." The other related to "counts eleven, twelve and thirteen." Only in the latter motion did National assign error with respect to the court's denial of the right to inspect that portion of the grand jury transcript used for refreshment purposes. Neither motion asserted that the error resulting from the denial of the right to inspect permeated counts one through ten.

sorting to the use of the grand jury transcript. The entire purport of the refreshment process was to refresh the memory of witnesses who were evasive, indefinite, and reluctant to testify materially on behalf of the government. Four out of the seven refreshment witnesses were officers or employees of National, while the remaining three were either past or present employees of National's co-conspirators. The record is clear that not only did these witnesses testify primarily with respect to the events in counts eleven, twelve and thirteen, but also their testimony was utilized by National as a partial basis for presenting its defense before the jury.

█ Notwithstanding the district court's instruction on the coalescence of intent evidence, we are not inclined to hold that the refreshment process prejudicially affected appellant's rights as to counts one through ten, particularly in light of the few instances in which any of the witnesses were actually refreshed. The record discloses that resort to the grand jury transcript produced only a minutia of substantial evidence. In most instances the witness either testified that he was not refreshed or attested to the veracity of his testimony before the grand jury. The record reveals, moreover, that such testimony was merely cumulative and that there was an abundance of other evidence, both verbal and documentary, to support the convictions under counts one through ten.[6] Thus, if we assume *arguendo* that the error affecting counts eleven, twelve and thirteen did extend to the remaining counts, such error was harmless and did not affect the substantial rights of National as to counts one through ten. See Kotteakos v. United States, 328 U.S. 750, 764, 66 S. Ct. 1239, 90 L.Ed. 1557 (1946).

National also contends that it is entitled to a new trial on the ground that it did not receive access to the grand jury testimony of numerous "non-refresh-ment" witnesses. This assignment of error is without substance.

Counsel for National concede, as indeed they must, that at no juncture of the trial did they move to inspect the grand jury transcript of the non-refreshment witnesses. On November 3, 1966, after remand, National for the first time moved for a new trial on the premise that it had been denied the grand jury testimony of the non-refreshment government witnesses. National attempts to justify its failure to take appropriate action in the district court to preserve its claim of error for review by asserting that the teachings of the Supreme Court in United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) and Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L. Ed.2d 1323 (1959), precluded "wholesale discovery." Hence it submits that a timely motion to inspect the testimony of the non-refreshment witnesses would have been futile.

██ We find no support in *Dennis* or the prior cases of the Supreme Court which relieved the defense from protecting its rights by timely motion to inspect. There is no authority which requires a district judge to grant access to grand jury testimony of trial witnesses, absent a timely and proper request. To the contrary, this is a prerequisite, not only as to inspection of the grand jury transcript, but also to statements encompassed in the Jencks Act. 18 U.S.C. § 3500 (1957). See, e. g., Banks v. United States, 348 F.2d 231, 234 (8th Cir. 1965); Lewis v. United States, 340 F.2d 678, 682 (8th Cir. 1965). Even under the liberal rule adopted by the Second Circuit in *Youngblood*, supra, the defense is required to move for inspection.

██ Furthermore, National's argument runs counter to the firmly established principle that absent a clear showing of plain error affecting substantial

---

6. Of added significance, we feel, is the fact that on the former appeal National in effect conceded a submissible case as to all counts, except one and two, eleven and thirteen. See National Dairy Products Corporation v. United States, supra, 350 F.2d at 324.

rights of the defendant, a reviewing court will not consider matters not properly presented to the trial court. See, e. g., McNeely v. United States, 353 F.2d 913, 917 (8th Cir. 1965); Osborne v. United States, 351 F.2d 111, 117 (8th Cir. 1965); Craig v. United States, 337 F.2d 28, 29 (8th Cir. 1964), cert. denied, 380 U.S. 909, 85 S.Ct. 891, 13 L.Ed.2d 796 (1965). National, however, has failed to demonstrate that it is entitled to invoke the plain error rule.

The judgment is reversed and cause remanded as to counts eleven, twelve and thirteen, and affirmed in all other respects.