**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Catherine JOHNSON, Defendant-
Appellant.**

**No. 18377.**

United States Court of Appeals
Sixth Circuit.

June 19, 1969.

Before WEICK, Chief Judge, and O'SULLIVAN and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant Catherine Johnson was indicted, and was convicted of perjury in violation of 18 U.S.C. § 1621 (1964) after a jury trial before the United States District Court for the Eastern District of Tennessee, Southern Division. She was sentenced to three years in the federal penitentiary.

In the aftermath of the trial and conviction of James Hoffa,[1] a third motion for new trial on his behalf was filed. Attached thereto (among others) was an affidavit signed by appellant on August 15, 1965, under the name of Patsy Jo Harris. In this affidavit appellant alleged that during the Hoffa trial in Chattanooga, Tennessee, and while the jury was sequestered on the 10th floor of the Read House Hotel under guard of United States Marshals, she was procured to render professional services as a prostitute to four members of the jury.

Subsequently, a federal grand jury was convened to investigate violations of the federal criminal laws in relation to the Hoffa new trial motions. Appellant was subpoenaed before the grand jury and on being questioned declined to answer on Fifth Amendment grounds. She was thereupon brought before a United States District Judge and granted immunity in relation to her testimony under the immunity provision of the Federal Communications Act, 47 U.S.C. § 409(*l*) (1964). Appellant thereupon testified, generally reiterating the allegations in her affidavit and identifying certain jurors and United States Marshals involved in the Hoffa trial from photographs.

John S. McLellan, Kingsport, Tenn., and Moses Krislov, Cleveland, Ohio, D. Bruce Shine, Kingsport, Tenn., on brief, for appellant.

Thomas A. Williams, Asst. U. S. Atty., Chattanooga, Tenn., J. H. Reddy, U. S. Atty., Chattanooga, Tenn., on brief, for appellee.

1. United States v. Hoffa, 349 F.2d 20 (6th Cir. 1965) (conviction affirmed and first motion for new trial denied), aff'd, 385 U.S. 293, reh. denied, 386 U.S. 940, 87 S.Ct. 970, 17 L.Ed.2d 880 (1966); 376 F.2d 1020 (6th Cir.) (second motion for new trial denied), cert. denied, 389 U.S. 859, 88 S.Ct. 102, 19 L.Ed.2d 124 (1967);

382 F.2d 856 (6th Cir. 1967) (third motion for new trial denied), cert. denied, 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968); 398 F.2d 291 (6th Cir. 1968) (fourth motion for new trial denied), vacated and remanded sub nom., Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1164, 22 L.Ed.2d 297 (1969).

On cross-examination she was indefinite as to her identification of two of the named jurors, but she was positive in asserting that she had sexual relations with jurors Curbow and Link several times on the 10th floor of the Read House Hotel during the course of the Hoffa trial. And she was positive in identifying a particular bellboy, Seymour Ball, as having procured her services, and a particular United States Marshal, James Kemp, as having escorted her to and from the 10th floor.

On March 24, 1967, the grand jury handed down a single-count indictment charging that appellant committed perjury when she testified before the grand jury that she had had sexual relations with jurors Curbow and Link during the course of the Hoffa trial.

At the trial the prosecution introduced the record of appellant's grand jury testimony and then called jurors Curbow and Link and Marshal Kemp. Each juror flatly denied ever having seen appellant (before the convening of the grand jury) and specifically denied having sexual relations with her during the course of the Hoffa trial. Marshal Kemp also testified that he had never seen or met appellant until the perjury trial. He denied knowing Seymour Ball and also specifically denied taking appellant to the 10th floor of the Read House Hotel during the Hoffa trial.

The prosecution called two other marshals—one who had overall and one who had direct supervision over the arrangements for sequestration of the Hoffa jury. Their testimony was that the 10th floor of the Read House Hotel had been carefully selected because its physical characteristics lent themselves to protection of the jury; that during the trial the hotel elevator operators generally did not go to the 10th floor (the top floor) except on order of a marshal; that 20 to 30 marshals were employed on three shifts, 7 days a week to be with the jury at the Read House Hotel at all times; that at least three were on duty at all times when the jury was in the hotel, with one of them stationed at each end of the long corridor at the exit doors and the other stationed midway in the corridor across from the two elevators; that each juror (including Curbow and Link and four married women) had individual rooms on this floor, and that anyone going onto the floor could be seen by the three marshals on duty.

During the trial of this case the jury was taken to the 10th floor of the Read House Hotel to inspect the physical layout described above.

Appellant did not testify (as, of course, she had a clear right not to do). Seymour Ball was not called as a witness at this trial, although testimony showed his presence in Chattanooga in company with a Teamsters Union agent, Charles O'Brien.

There was no witness called at trial by appellant who offered direct support for the statements which occasioned the perjury charges. Three witnesses for the defense did, however, testify to facts which, if believed by the jury, would have tended to dispute elements of the prosecution's case and raise a reasonable doubt about appellant's guilt.

Ezell Ervons, who had been a bellboy at the Read House Hotel during the Hoffa trial, testified that he had been approached by a man whom he believed to be a United States Marshal and asked about a girl; that he had one; and that she went to the 10th floor of the hotel and subsequently came back and paid him. He identified the prostitute only by the name of Jo. He said that Jo was not appellant; that he had never seen Jo before or since, and he did not identify the marshal or the juror. He testified that after leaving the Read House Hotel he had worked on a job in Atlanta, Georgia, which Teamster agent O'Brien had secured for him.

Venette Weaver testified that in 1967 (three years after the Hoffa trial, but before this one) she had been rooming with a Mrs. Odom, whom Hoffa trial juror Curbow had been dating, and that in her presence a discussion between

Curbow and Mrs. Odom had taken place. Her testimony was:

"Q. (Interposing) Who is she?

A. Mrs. Odom. Asked how he felt to have sexual intercourses with a girl younger than his own daughter.

Q. What, if anything, did Mr. Curbow say in response to that?

A. He said that, 'She will have to be able to identify me.'

Q. Was anything else said?

A. No, sir.

Q. With respect to this?

A. Huh-uh.

Q. And at that time I believe you testified you were sharing the same residence with—

A. (Interposing) Yes, she was sharing the residence, we were sharing the residence together.

Q. That is, you and Mrs. Odom?

A. Yes.

Q. And Mr. Curbow had been dating her?

A. Yes."

Curbow on cross-examination denied making such a statement. Mrs. Odom did not testify.

Troyce Maydean Henry testified that in company with United States Marshal Reidy she attended a party on the 10th floor of the Read House Hotel on the night the Hoffa trial ended. She testified that there were other women there. She also testified that she had seen no jurors there nor had she seen the appellant. She also testified that during the Hoffa trial she saw a man whom she later identified from photographs as juror Curbow at a V. F. W. hall on one occasion and at the Alamo Plaza Motel on another. She testified that she had never met this man before or since; that the identification was made approximately two years after the Hoffa trial and a year and a half after she had failed to identify anyone when she had first been shown the pictures of the Hoffa jury. She testified that she had originally gone to talk with Teamster Union officials at the behest of her brother-in-law, whom she identified as working for the Teamsters.

We have gone this much into the factual detail of this trial because of appellant's insistence in her first appellate question that she was entitled to have her motion for acquittal granted by the District Judge because of the failure of government proof to meet required legal standards.

■ There is, of course, no doubt that the prosecution does have a "unique and stringent burden of proof" in perjury cases. Spaeth v. United States, 232 F.2d 776, 777 (6th Cir. 1956). To sustain a perjury conviction there must be at least two witnesses or one witness corroborated by independent circumstances. Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495 (1945). Appellant argues vigorously in this case that jurors Curbow and Link by denying any contact with appellant cannot be regarded as meeting the "two witness" rule, since neither could support the other's denial. Assuming arguendo the validity of this contention (*But see* May v. United States, 280 F.2d 555 (6th Cir. 1960)), we believe there is ample independent corroboration. Appellant's story charged that United States Marshal Kemp escorted her to the 10th floor of the Read House Hotel on each occasion when she had sexual relations with Curbow and Link. Kemp positively denied doing any such thing. His testimony must be regarded as independent corroboration of that of Curbow and Link. So, too, is the mass of testimony pertaining to the physical and personnel arrangements made by the United States Marshal to protect this jury.

We conclude that the District Judge was correct in denying both the motion for acquittal at the close of proofs and the motion for new trial after the jury verdict of guilty. The factual issues were for jury determination.

■ Appellant also attacks the indictment as fundamentally defective because it failed to employ the word "willfully" which is contained in the perjury statute,

18 U.S.C. § 1621 (1964).[2] The District Judge rejected this argument because he held that the language of the indictment[3] sufficiently alleged willfulness. *See* Finn v. United States, 256 F. 2d 304 (4th Cir. 1958). While we agree with this view, we affirm also on the ground that Rule 7(c) of the Federal Rules of Criminal Procedure greatly liberalized pleading practice so that the citation of the statute itself served to allege willfulness. Cochran v. United States, 336 F.2d 799 (6th Cir. 1964), cert. denied, 380 U.S. 945, 85 S.Ct. 1028, 13 L.Ed.2d 964 (1965); United States v. Roberts, 296 F.2d 198 (4th Cir. 1961), cert. denied 369 U.S. 867, 82 S.Ct. 1033, 8 L.Ed.2d 85 (1962); Ochoa v. United States, 167 F.2d 341 (9th Cir. 1948).

And the District Judge took pains to charge the jury fully and carefully on the issue of willfulness.

Nor do we find any lack of specificity in the indictment. Appellant was advised by its terms of the exact charge which she faced.

As we understand appellant's contention IV, it is that appellant could not be prosecuted for perjury because the questions to which she is alleged to have given false answers were beyond the scope of and not materially related to the Federal Communications Act under which she was granted immunity.

The grand jury foreman testified at this trial that perjury was among the subjects which the grand jury was charged with investigating. We think it is much too late to doubt that the grant of immunity to appellant was coextensive with the relevant answers she gave to the questions asked under the grant of immunity. Murphy v. Waterfront Comm., 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

We believe that appellant's Fifth Amendment rights were amply protected if she told the truth under the grant of immunity. But it is relevant to note that the statute expressly excepted perjury committed while she was testi-

---

2. "Whoever, having taken an oath before a competent tribunal * * * that he will testify * * * truly, * * * willfully and contrary to such oath states * * * any material matter which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both. * * * *" 18 U.S.C. § 1621 (1964).

3. "1. On or about January 24, 1966, in the Eastern District of Tennessee, a competent tribunal, that is, a Grand Jury of the United States of America, duly impaneled and sworn in the United States District Court for the Eastern District of Tennessee, was conducting an inquiry to determine among other things whether there had been committed in the Eastern District of Tennessee violations of 18 USC 201 (Bribery), 18 USC 1503 (Obstruction of Justice), 18 USC 1621 (Perjury), and other Federal criminal statutes, said inquiry being in a case in which a law of the United States authorized an oath to be administered.

"2. It was material to this Grand Jury Inquiry to ascertain, among other things, whether Catherine Johnson (also known as Patsy Jo Harris) had sexual intercourse with William Link and John Curbow, who were petit jurors in the trial of United States v. James R. Hoffa et al., (Criminal No. 11,989), during said trial, and while said petit jurors were sequestered on the tenth floor of the Read House Hotel during the said trial.

"3. On or about January 24, 1966, the defendant, Catherine Johnson, having duly taken an oath before the said Grand Jury that, as a witness before said Grand Jury, she would testify truly, did, then and there, state material matters which she did not believe to be true, to wit, she stated that she had had sexual intercourse with the aforesaid William Link and John Curbow during the aforesaid trial on the tenth floor of the Read House Hotel.

"4. The aforesaid testimony of Catherine Johnson, as she then and there well knew and believed, was not true in that Catherine Johnson did not have sexual intercourse with either the aforesaid William Link or the aforesaid John Curbow during the aforesaid trial on the tenth floor of the Read House Hotel.

"In violation of Title 18, United States Code, Section 1621."

fying under the grant of immunity.[4] *Cf.* Glickstein v. United States, 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911).

We also feel that the inquiries directed to appellant taken in context of the investigation were substantially related to possible violations of the Federal Communications Act.

In United States v. Harris, the Second Circuit said:

"Section 409(*l*) of Title 47 of the United States Code extends immunity for testimony given 'in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of [the Federal Communications Act].' Harris contends that he should have been granted the right to summon several witnesses, including one or two members of the grand jury, to establish that the grand jury's investigation did not pertain to alleged violations of the Communications Act. We do not agree. The extent in general to which a witness may inquire into the subject matter of a grand jury investigation is severely circumscribed, in light of the secrecy in which grand jury proceedings have traditionally been held. United States, v. Levine, 267 F.2d 335, 336–337 (2 Cir. 1959). See Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919). In any event we find that the government sufficiently established that the grand jury's investigation fell within the confines of § 409(*l*).

"First, the August 7 subpoena explicitly stated that the grand jury was engaged in investigation of possible violations of provisions of the Communications Act. Second, the government's counsel represented to the court that the grand jury was investigating possible violations of the Communications Act. Finally, the questions themselves revealed a substantial link with those sections of the Communications Act which prohibit any person from causing a telephone company to violate any provision of the Act. Cf. In re Bart, 113 U.S.App. D.C. 54, 304 F.2d 631, 637 (1962)." United States v. Harris, 334 F.2d 460, 462–463 (2d Cir. 1964), reversed and remanded on other grounds, 382 U.S. 162 (1965), aff'd on remand, 367 F.2d 826 (2d Cir. 1966), cert. denied, 385 U.S. 1010, 87 S.Ct. 718, 17 L.Ed.2d 547 (1967).

*Accord*, Marcus v. United States, 310 F. 2d 143 (3d Cir. 1962), cert. denied, 372 U.S. 944, 83 S.Ct. 933, 9 L.Ed.2d 969 (1963); In re Grand Jury Investigation of Giancana, 352 F.2d 921 (7th Cir.), cert. denied, Giancana v. United States, 382 U.S. 959, 86 S.Ct. 437, 15 L.Ed.2d 36 (1965).

We agree with this view and feel that it is directly applicable to our instant case.

Further, even if a particular question was irrelevant to Federal Communications Act purposes, we profoundly doubt that this fact would grant appellant a "license to commit perjury." Glickstein v. United States, 222 U.S. 139, 143, 32 S.Ct. 71, 56 L.Ed. 128 (1911). Of course, in this case we have no occasion

---

4. "(*l*) No person shall be excused from attending and testifying or from producing books, papers, schedules of charges, contracts, agreements, and documents before the Commission, or in obedience to the subpena of the Commission, whether such subpena be signed or issued by one or more commissioners, or in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of this chapter, or of any amendments thereto, on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him or subject him to a penalty or forfeiture; but no individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, documentary or otherwise, *except that any individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying.*" 47 U.S.C. § 409(*l*) (1964). (Emphasis added).

to consider what might be the situation if appellant had refused to answer on grounds of irrelevance. *See* United States v. Testa, 326 F.2d 730 (3d Cir.), cert. denied, 376 U.S. 931, 84 S.Ct. 701, 11 L.Ed.2d 652 (1964); In re Bart, 113 U.S.App.D.C. 545, 304 F.2d 631 (1962).

We have read with care the circumstances under which appellant was questioned by an FBI agent. Plainly, this was not "in-custody" interrogation which would demand the full panoply of the *Miranda* warnings. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966). Appellant was not under indictment at the time. Cf. Massiah v. United States, 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). She was warned of her basic constitutional rights and there were no threats or inducements, nor was there any coercion. *Cf.* Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).

Appellant also cites as reversible error four instances where the District Judge refused to admit evidence. In one instance the evidence would have tended to show possible misconduct on the part of juror Curbow with a different woman at a different time and place. Other rejected testimony would have tended to charge some of the United States Marshals with indiscreet conduct when off duty. The District Judge's analysis of this proffered evidence in his opinion denying appellant's motion for new trial justifies his rejection of the matters on grounds of irrelevance. His rulings were within the discretionary authority of a trial judge and do not constitute prejudicial error. *See* Kansas City Star Co. v. United States, 240 F.2d 643 (8th Cir.), cert. denied, 354 U.S. 923, 77 S.Ct. 1381, 1 L.Ed.2d 1438 (1957); United States v. Higgins, 362 F.2d 462 (7th Cir. 1966); United States v. Johnston, 318 F.2d 288 (6th Cir. 1963); Hardy v. United States, 118 U.S.App.D.C. 253, 335 F. 2d 288 (1964).

We also feel that the District Judge's handling of the jury request for a portion of Exhibit 2 was within his judicial discretion. Obviously (although the record might be read differently) the District Judge thought that Exhibit 2 (a 372 page transcript of appellant's grand jury testimony) had been marked for purposes of identification and would be considered as admitted in evidence only when actually read into the record of the trial before the jury. Each side had without objection read portions of the transcript to the jury during closing argument. The jury asked to have reread a portion which had been read during the government's argument. It was the defense who objected to reading just that portion which the jury sought. The government in turn objected to giving the jury the whole 372 page transcript as defense suggested. We find no error prejudicial to defendant in the District Judge's ultimate refusal of the jury request. *See* Caldwell v. United States, 36 F.2d 738 (10th Cir. 1929), cert. denied, 281 U.S. 725, 50 S.Ct. 239, 74 L.Ed. 1143 (1930); Buckley v. United States, 33 F.2d 713 (6th Cir. 1929); Murray v. United States, 76 U.S.App. D.C. 179, 130 F.2d 442 (1942).

As to appellant's issue pertaining to her motion filed pretrial for the entire grand jury transcript, we note that the District Judge granted the motion so far as it would pertain to appellant's own testimony, and then said as follows:

"With respect to the defendant's motion for production of a transcript of the proceedings before the Grand Jury, including the testimony of William Link and John Curbow, the Court is of the opinion that the motion should be denied, except to the extent that the defendant is entitled to a copy of her testimony before the Grand Jury in accordance with Rule 16(a) (3), Federal Rules of Criminal Procedure. · A · disclosure of testimony before the Grand Jury may properly be obtained only upon a showing of 'particularized need' and then in a manner· consistent with the Jencks Act. Dennis v. United States, 384 U.S. 855 [86 S.Ct. 1840, 16 L.Ed.2d 973]; United States v. Procter &

Gamble, 356 U.S. 677 [78 S.Ct. 983, 2 L.Ed.2d 1077]."

No request for production of the grand jury testimony of government witnesses at trial for purposes of cross-examination was ever made. *Cf.* Dennis v. United States, 384 U.S. 855, 875, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); United States v. Youngblood, 379 F.2d 365, 370 (2d Cir. 1967); National Dairy Products Corp. v. United States, 384 F.2d 457 (8th Cir. 1967), cert. denied, 390 U.S. 957, 88 S.Ct. 1032, 19 L.Ed.2d 1151 (1968).

Nor was there ever an attempt made to show a "particularized need" for this testimony. *See* United States v. Procter & Gamble Co., 356 U.S. 677, 683, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed. 2d 1323, rehearing denied, 361 U.S. 855, 80 S.Ct. 42, 4 L.Ed.2d 94 (1959); United States v. Hensley, 374 F.2d 341, 352–353 (6th Cir.), cert. denied, 388 U.S. 923, 87 S.Ct. 2139, 18 L.Ed.2d 1373, rehearing denied, 389 U.S. 891, 88 S.Ct. 25, 19 L.Ed.2d 210 (1967). As to this issue we find no error.

We read the dissent as suggesting that pretrial discovery of grand jury proceedings be granted generally to defendants on a request stating that it is necessary for preparation for trial. This appears to us to be a far cry from the particularized need test in United States v. Procter & Gamble Co., *supra.* No such rule has previously been enforced in this circuit. United States v. Barnes, 313 F.2d 325 (6th Cir. 1963); United States v. Hensley, *supra.*

Nor has the suggested rule been adopted by the federal courts generally. Walsh v. United States, 371 F.2d 436 (1st Cir.), cert. denied, 387 U.S. 947, 87 S.Ct. 2083, 18 L.Ed.2d 1335 (1967); Hanger v. United States, 398 F.2d 91 (8th Cir. 1968); United States v. Johnson, 337 F.2d 180 (4th Cir. 1964).

Nor is it in our view consistent with the concern expressed by the United States Supreme Court for preserving the secrecy of grand jury proceedings. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1957); United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943); United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

The rule suggested by the dissent would go far beyond the requirements of Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). In *Dennis* the United States Supreme Court held that production *at trial* of grand jury statements of government witnesses for purposes of cross-examination was required where defendants asked for such statements. The holding in the *Dennis* case was:

"Because petitioners were entitled to examine the grand jury minutes relating to trial testimony of the four government witnesses, and to do so while those witnesses were available for cross-examination, we reverse the judgment below and remand for a new trial." Dennis v. United States, *supra* at 875, 86 S.Ct. at 1852.

In our instant case, although, in our opinion, the trial judge suggested the proper procedure by his reference to the *Dennis* and *Procter & Gamble* cases,[5] no request for grand jury testimony was ever made at the trial for the purpose of cross-examination of government witnesses.

We do not find any showing in this record to suggest the existence of a Brady v. Maryland issue. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

We have considered issues XII, XIII and XIV. All of these issues have been dealt with effectively in the District Judge's opinion and we affirm the reasoning and result contained therein.

---

5. Dennis v. United States, 384 U.S. 855, 875, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); United States v. Procter & Gamble Co., 356 U.S. 677, 683, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

The judgment of the District Court is affirmed.

O'SULLIVAN, Circuit Judge (dissenting).

The basis of my dissent is a view that defendant-appellant Johnson was denied a fair trial by the refusal of the District Court to allow her attorney access to the transcript of the grand jury testimony of two jurors in the Hoffa trial, Link and Curbow, whose testimony before the grand jury brought about her indictment for perjury.

Appellant, a prostitute, had sworn to an affidavit which recited that she had, on several occasions, furnished her services to some of the jurors who were considering, and ultimately joined in, the conviction of Hoffa and his co-defendants. Her affidavit with others, was used to support a Motion for New Trial made by Hoffa and which charged serious misconduct by some members of the Hoffa jury while they were sequestered in a hotel in Chattanooga, Tennessee.

The basis for the perjury charge was not the affidavit that appellant had signed, but was her testimony before the grand jury. The indictment charged that the grand jury was,

"conducting an inquiry to determine among other things whether there had been committed in the Eastern District of Tennessee violations of 18 U.S.C. 201 (*Bribery*), 18 U.S.C. 1503 (*Obstruction of Justice*), 18 U.S.C. 1621 (*Perjury*), and other Federal criminal statutes." (Emphasis supplied.)

Called before the grand jury, appellant, exercising her Fifth Amendment rights, refused to answer the questions asked her by the United States Attorney. Thereupon she was taken before a District Judge who was advised by the United States Attorney that the grand jury was investigating, among other things, possible violations of the *Federal Communications Act*. This was done, quite obviously, so that the government might ask the District Judge to grant immunity to appellant, thus to expose her to extensive cross-examination upon the subject matter of the grand jury's investigation. The Federal Communications statute is one of few which permits this type of procedure, namely, granting of immunity but reserving to the government the right to prosecute should the answers compelled under the grant of immunity be claimed to be perjurious. We can only speculate whether this procedural device was part of a government plan to obtain cross-examination of this young woman before formal accusation of her would foreclose such activity.

Responding in this cross-examination, appellant reiterated her charges against the involved jurors, verifying as true the contents of her affidavit. The cross-examination, however, was wide-ranging and indeed equipped the United States Attorney with valuable and important material for use in preparing for a perjury trial. If the accusations made by appellant in her affidavit were false, she had already committed perjury. It was not necessary to a prosecution for perjury to have her repeat such allegedly false charges before a grand jury. This is not to say that I would fault a government lawyer for employing whatever legitimate "strategy" he may choose as an aid to bringing criminals to justice. But in this case the disparity between what the government was allowed in preparing to prosecute and what was denied to defendant, in my view, impaired her right to a fair trial. The accused was cross-examined, 372 pages worth, before the grand jury and the prosecution had a transcript of it from the time the examination was conducted.[1] Defendant, however, was not allowed *at any time*

---

1. Appellant did not take the stand at her trial. However, the entire transcript of her grand jury testimony in which she supported her charges against the jurors Link and Curbow was introduced as evidence in the government's case. If the evidence which she gave before the grand jury was true, as she claimed, she was not guilty.

to have the grand jury testimony of her accusers, whose grand jury and trial testimony brought about her conviction.

In preparation for trial, counsel made a motion for an order requiring the United States Attorney,

> "To furnish the defendant a transcript of the proceedings before the Grand Jury, including but not limited to, her testimony, *and testimony of William Link and John Curbow.*" (Emphasis supplied.)

The District Court in refusing to grant the motion said:

> "With respect to the defendant's motion for production of a transcript of the proceedings before the Grand Jury, *including the testimony of William Link and John Curbow,* the Court is of the opinion that the motion should be *denied,* except to the extent that the defendant is entitled to a copy of *her testimony* before the Grand Jury in accordance with Rule 16(a) (3), Federal Rules of Criminal Procedure. A disclosure of testimony before the Grand Jury may properly be obtained only upon a showing of 'particularized need' and then in a manner consistent with the Jencks Act. Dennis v. United States, 384 U.S. 855 [86 S.Ct. 1840, 16 L.Ed.2d 973]; United States v. Procter & Gamble, 356 U.S. 617 [78 S.Ct. 983, 2 L.Ed. 2d 1077]." (Emphasis supplied.)

Implicit in Judge Wilson's ruling is a conclusion that a "particularized need" for the grand jury testimony of Link and Curbow had not been shown and that in all events appellant could obtain and use such a transcript only in conformity with the Jencks Act. In my view these conclusions are erroneous.

In today's scene, a lawyer charged with the duty of defending a person accused of crime has indeed a "particularized need" for previous relevant testimony of his client's accusers. The grand jury testimony of Link and Curbow brought about appellant's indictment and in the impending trial the prosecution's whole case would depend upon what they would say in open court. Any lawyer worth his salt would request a transcript of what these two had already sworn to. Appellant's counsel did so, but was turned down. Apart from the inherent obviousness of this need, I consider that in the case at bar defense counsel's motion, supported by an affidavit of his client, clearly stated such particularized need. The affidavit contained the following:

> "3. The defendant, Catherine Johnson, has been advised that the transcript of proceedings of the Grand Jury are not subject to subpoena or other process and can only be obtained by order of this Honorable Court. That the Grand Jury proceedings are in the exclusive control of the United States Attorney, as well as all other records, recordings, reports and documents and not available to defendant through any other source or through any other process except as here sought.
>
> "4. The defendant makes oath that each of the items mentioned in her motion for discovery and inspection *is material to the preparation of her defense* and that the request is reasonable in view of the court's recognition that disclosure, rather than suppression of relevant materials ordinarily promotes the proper administration of criminal justice." (Emphasis supplied.)

The United States Supreme Court in United States v. Procter & Gamble, 356 U.S. 617, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), and Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959), has expressed circumstances under which a trial court may properly deny to litigants the use of transcripts of testimony given before a grand jury.

Whatever may earlier have been said as to whether an accused should be provided with the grand jury testimony of witnesses who are his accusers, the case of Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), expresses the Supreme Court's

current view of the subject. I consider that it supports the view I take. In that case, conviction of the defendants was reversed because the trial court denied their motion to have furnished to them a transcript of the grand jury testimony of their accusers. The factual and procedural differences between that case and the one before us do not detract from its appositeness to the case at bar.[2] I read the Supreme Court's opinion as indicating that a "particularized need" for the grand jury testimony of the accusers of a defendant arises, without more, when defense counsel expresses his need for it to prepare for trial. Neither in the District Court nor here did the government make any claim that, aside from trial advantage to the prosecution, was there need to keep secret the requested grand jury testimony. My brothers do not point to any reason for withholding the testimony and neither did the District Judge in his opinion denying appellant's motion for new trial. Dealing generally with our subject on the point here involved, a unanimous Supreme Court in *Dennis*, said:

> "In United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 234, 60 S.Ct. 811, 84 L.Ed. 1129, the Court acknowledged that 'after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it.' In *Procter & Gamble, supra,* the Court stated that 'problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility * * *' are 'cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly.' 356 U.S., at 683, 78 S.Ct., at 987. And in *Pittsburgh Plate Glass, supra,* where four members of the Court concluded that even on the special facts of that case

the witness' grand jury testimony should have been supplied to the defense, the entire Court was agreed that upon a showing of 'particularized need' defense counsel might have access to relevant portions of the grand jury testimony of a trial witness, 360 U.S., at 400, 405, 79 S.Ct., at 1241, 1244. In a variety of circumstances, the lower federal courts, too, have made grand jury testimony available to defendants." 384 U.S. at 870, 86 S.Ct. at 1849.

The Court's *Dennis* opinion may, in my view, also be read as expressing the thought that unless some other reasons intervene, it is the defense counsel who should make the determination as to his need for the grand jury testimony.

> "In our adversary system, it is enough for judges to judge. *The determination of what may be useful to the defense can properly and effectively be made only by an advocate.*[3] The trial judge's function in this respect is limited to deciding whether a case has been made for production, and to supervise the process: for example, to cause the elimination of extraneous matter and to rule upon applications by the Government for protective orders in unusual situations, such as those involving the Nation's security or clearcut dangers to individuals who are identified by the testimony produced." (Emphasis supplied.) 384 U.S. at 875, 86 S.Ct. at 1851.

I conclude reference to *Dennis* by quoting these additional observations:

> "In our adversary system for determining guilt or innocence, *it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact.* Exceptions to this are justifiable only by the clearest and most compelling considerations." 384 U.S.

---

2.  The motions that were there denied were made at the conclusion of the direct examination of each of the witnesses whose grand jury testimony was sought. I do not consider that a distinguishing circumstance.

3.  Cf. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

at 873, 86 S.Ct. at 1851. (Emphasis supplied.)

Relative to the assertion that it was within the discretion of the District Judge to rule as he did, the following is in point:

"But the Government argues that it was not error for the trial judge to have denied petitioner's motions. With this latter proposition we disagree, and we reverse." 384 U.S. at 869, 86 S.Ct. at 1848.

Other circuits have interpreted Dennis v. United States, *supra*, substantially as I have. See United States v. Youngblood, 379 F.2d 365 (2d Cir. 1967); Cargill v. United States, 381 F.2d 849 (10th Cir. 1967); and Nat'l Dairy Products Corp. v. United States, 384 F.2d 457 (8th Cir. 1967).

Further, I respectfully disagree that it was proper for the District Judge to rule that, had a particularized need been shown, the requested grand jury testimony could be used only "in a manner consistent with the Jencks Act." Subsection (a) of the Jencks Act, 18 U.S.C. § 3500 provides:

In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) to an agent of the Government shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."

In Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 398, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959), the Supreme Court made clear that the Jencks Act has no relevancy to an accused's request for grand jury minutes. The Court there said:

"It appears to us clear that Jencks v. United States, *supra*, is in nowise controlling here. It had nothing to do with grand jury proceedings and its language was not intended to encompass grand jury minutes. Likewise, it is equally clear that Congress intended to exclude those minutes from the operation of the so-called Jencks Act, 71 Stat. 595, 18 U.S.C. (Supp. V, 1958) § 3500."

To comply with the Jencks Act and wait until a government witness has completed his direct examination before obtaining that witness' grand jury testimony would aid little, if any, in the preparation for trial. I read *Dennis* as holding that under facts such as we have here the desired transcript should be made available at a time when it will assist in such preparation.

The majority observes that "no request for grand jury testimony was ever made at the trial for the purpose of cross-examination of government witnesses." The District Judge had already denied the request and, as set out above, the Jencks Act has no application. I fail to see the importance of the time of the request, unless it be that the government should be allowed to keep secret this important material until the eleventh hour, thus to gain advantage over the defense. No other reason is discernible.

Notwithstanding a contrary contention of the majority, I consider that I propose no new general rule. Neither does the ruling I suggest collide with any previous decision dealing with the special facts that are present here. I consider that my view comports with the statement of *Dennis* that:

"These developments are entirely consonant with the growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." 384 U.S. at 870, 86 S.Ct. at 1849.

I am of the opinion that the defendant's motion with her supporting affidavit disclosed a "particularized need" for the grand jury testimony of her accusers, Link and Curbow, and denial of her motion was error.

I would reverse and remand for a new trial.