**UNITED STATES of America**

**v.**

**Ernest RUSSO, Defendant.**

**Crim. No. 528–62.**

United States District Court,
D. New Jersey.

May 15, 1973.

**437**

Valore, McAllister & Westmoreland, by Alvin D. Miller, Atlantic City, N. J., for petitioner.

Herbert J. Stern, U. S. Atty., by Frederick W. Klepp and William Braniff, Asst. U. S. Attys., for defendant.

OPINION

COHEN, Chief Judge:

Defendant, Ernest Russo, seeks a vacation of the sentence imposed upon him April 19, 1963 on an indictment returned November 7, 1962 charging six offenses of the federal statutory scheme for taxing illegal wagers, in violation of 26 U. S.C. §§ 7203 and 7262. These six counts were predicated on Russo's failure to pay a special gambling occupational tax required under 26 U.S.C. §§ 4401, 4411 and upon his failure to register with and supply information to the District Director of the Internal Revenue Service, as required by 26 U.S.C. § 4412(a).

Initially, on November 16, 1962, Russo pleaded not guilty to the indictment, but on March 1, 1963 he withdrew his previous plea and entered a plea of guilty to all six counts thereof. On April 19, 1963 the defendant was fined $1,000.00, the payment of which was suspended and he was placed on probation for a period of five years without supervision. This probationary period expired prior to the filing of this motion.

The motion is in the nature of a writ of error *coram nobis*. In support thereof, Russo relies on Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L. Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L. Ed.2d 906 (1968) which held that the assertion by a defendant of the privilege against self-incrimination under the fifth amendment is a bar to prosecution for violation of the federal laws taxing illegal wagers. He claims that these cases should have retroactive application; that although he has completed his period of probation he is still suffering civil disabilities as a result of his conviction, *e.g.*, an inability to obtain employment; and is entitled to relief.

JURISDICTION

Title 28 U.S.C. § 1651(a) empowers federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to

the usages and principles of law." In United States v. Morgan, 346 U.S. 502, 511, 74 S.Ct. 247, 98 L.Ed. 248 (1954), the Court concluded that this "all-writs" section empowers a district court to take cognizance of a motion in the nature of *coram nobis.* The Court further noted that:

> [s]uch a motion is a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil proceeding. *Id.* at 505, n. 4, 74 S.Ct. at 249.

Thus, the hearing of such a motion is "in aid" of the already existing criminal jurisdiction of this court.[1]

 Additionally, in United States v. National Dairy Products Corp., 313 F.Supp. 534, 537 (W.D.Mo.1970), the court stated:

> We view Morgan's recognition of *coram nobis* jurisdiction as simply a determination that Section 1651(a) is broad enough to provide commensurate postconviction jurisdiction for federal prisoners who fall outside the "custody" requirement of Section 2255.

Finally, the court concluded that *"coram nobis* is presently available to test the validity of sentences completely served . . ." *Id.*

The only remaining jurisdictional question is whether the error complained of by the defendant is of the nature normally within the scope of *coram nobis* relief. In United States v. Mayer, 235 U.S. 55, 69, 35 S.Ct. 16, 19, 59 L.Ed. 129 (1914), the Court stated that *coram nobis* was designed to correct situations

> where the errors were of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid.

The inability of defendant to exercise his fifth amendment privilege against self-incrimination is unquestionably an error that directly affects the validity of the prior proceeding. Meadows v. United States, 420 F.2d 795, 799 (9th Cir. 1969). If defendant had been able to invoke the fifth amendment privilege, this conviction would have been impossible since the Supreme Court has held that invocation of the fifth amendment privilege is a bar to prosecutions for violations of the federal wagering tax scheme. This is precisely the area within which *coram nobis* was designed to operate. See, *e.g.,* Johnson v. United States, 344 F.2d 401, 411 (5th Cir. 1965); Kiger v. United States, 315 F.2d 778, 779 (7th Cir. 1963), cert. denied, 375 U.S. 924, 84 S.Ct. 270, 11 L.Ed.2d 166 (1963). We have jurisdiction.

## MERITS

Defendant seeks to have the *Marchetti* and *Grosso* decisions applied retroactively. The specific statutes involved in those cases were 26 U.S.C. §§ 4401, 4411, and 4412; here, defendant pleaded guilty to charges of violating the very same statutes. The Court in *Marchetti,* 390 U.S. at 42, 88 S.Ct. at 699, stated:

> these provisions may not be employed to punish criminally those persons who have defended a failure to comply with their requirements with a proper assertion of their privilege against self incrimination.

 In the instant case, defendant did not assert that privilege until the filing of this motion because theretofore the Supreme Court had twice concluded that the privilege against compulsory self-incrimination is not violated by the occupational taxes and disclosure requirements of the federal wagering tax scheme. Lewis v. United States, 348 U.S. 419, 422, 75 S.Ct. 415, 99 L.Ed. 475 (1955); United States v. Kahriger, 345 U.S. 22, 32–33, 73 S.Ct. 510, 97 L.Ed. 754 (1953).

In United States v. Lucia, 416 F.2d 920 (5th Cir. 1969), rehearing en banc, 423 F.2d 697 (5th Cir. 1970), cert. denied, 402 U.S. 943, 91 S.Ct. 1607, 29 L.

---

1. This same civil-criminal distinction also brings this motion outside the scope of F.R.Civ.P. 60 which abolished motions in the nature of a writ of *coram nobis* in civil cases.

Ed.2d 111 (1971), it was maintained that the failure of a petitioner to raise his fifth amendment rights at trial and on appeal was irrelevant. The Court declared:

> Lucia had no knowledge of his right against self-incrimination under the *Grosso* and *Marchetti* rule for, at the time, those cases had not been decided. In earlier cases . . . the Supreme Court had rejected the contention that prosecution under the federal gambling tax scheme violates the Fifth Amendment. Lucia therefore, could not have "knowingly and intentionally" waived his privilege against prosecution; that privilege did not exist. 416 F.2d at 922.

In Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1937), the Supreme Court declared that "[A] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." In the instant case, although somewhat belated, the assertion is still proper and timely in that until 1968 there was, in effect, no privilege to assert. Thus, there was no knowing, intelligent waiver.

The Court in *Grosso* implicitly acknowledged the invalidity of any claim of waiver, by reversing the judgment of conviction on two counts to which the defendant had not asserted a claim of privilege. The Court's decision rested primarily on the absence of any information upon which a finding of waiver could be based, 390 U.S. at 71, 88 S.Ct.

709. The record of the instant case is equally barren. This court, therefore, concludes that defendant has met the Supreme Court requirement of a proper and timely assertion of his privilege.

The Supreme Court has never considered the full retroactivity of *Marchetti*.[2] In a proceeding, however, in which the Government attempted to utilize the forfeiture procedure under 26 U.S.C. § 7302, and thereby obtain the money in possession of a person arrested under the *Marchetti* statutes, the Court gave its *Marchetti* ruling retroactive application and overturned the forfeiture decree. United States v. United States Coin and Currency, 401 U.S. 715, 724, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). In a companion case, Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971), dealing with an appeal from a conviction for income tax evasion based on the utilization of submitted monthly wagering tax forms, the Supreme Court concluded that *Marchetti* and *Grosso* were not to be applied retroactively because there was no indication that the wagering tax forms were unreliable as evidence.[3] In the *Mackey* case the defendant was not prosecuted for violations of the federal gambling tax laws because he had, in fact, submitted all required forms. Rather, he was prosecuted for income tax evasion and the gambling tax forms were used as evidence on the alleged evasion. This is clearly distinguishable from the case at bar, in which there is no question of utilization of wagering tax forms and

2. The Supreme Court has, however, procedurally dealt with retroactivity cases in this area. In Graham v. United States, 407 F.2d 1313 (6th Cir. 1969), vacated, 402 U.S. 938, 91 S.Ct. 1623, 29 L.Ed.2d 107 (1971), the Sixth Circuit refused to give *Marchetti* and *Grosso* retroactive application. The Supreme Court vacated and remanded for reconsideration in light of United States v. United States Coin and Currency, *supra*. For Circuits that have granted retroactive application to *Marchetti* and *Grosso*, *see also*, Meadows v. United States, 420 F.2d 795 (9th Cir. 1969), cert. denied, 402 U.S. 948, 91 S.Ct. 1607, 29 L.Ed.2d

118 (1971); United States v. Lucia, 416 F.2d 920 (5th Cir. 1969), rehearing en banc, 423 F.2d 697 (5th Cir. 1970), cert. denied, 402 U.S. 943, 91 S.Ct. 1607, 29 L.Ed.2d 111 (1971).

3. The Court in *Mackey* stated:
 the Court's purpose [in deciding *Marchetti* and *Grosso*] was to provide for a broader implementation of the Fifth Amendment privilege—a privilege that does not include at its core a concern for improving the reliability of the results reached at criminal trials. 401 U.S. at 674, 91 S.Ct. at 1164.

their reliability as evidence. It is a question of failing to submit the required forms which would have resulted in self-incrimination. If the fifth amendment privilege is to be given broader implementation, then defendant must be allowed to now avail himself of that privilege.

The Third Circuit Court of Appeals has never decided whether *Marchetti* and *Grosso* should be given retroactive application. It did, however, confront the issue of retroactivity in Bannister v. United States, 446 F.2d 1250 (3rd Cir. 1971), a case dealing with non-payment of a transfer tax on marihuana and the fifth amendment privilege against self-incrimination. Although there is no majority opinion, the retroactive application of Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), which held the transfer tax on marihuana unconstitutional, was considered. In vacating the conviction, the opinion of Circuit Judge Biggs in *Bannister* gave great weight to the decisions of those circuits which granted *Marchetti* and *Grosso* full retroactivity. 446 F.2d at 1257 n. 11. Furthermore, in analyzing United States v. United States Coin and Currency, *supra*, Judge Biggs stated:

> If *Marchetti-Grosso* be applied retroactively in a forfeiture case it would seem that *a fortiori* the rule would be applicable in a criminal case such as that at bar. 446 F.2d at 1261.

In determining when new constitutional standards of criminal procedure should be given retroactive effect, this Court must review the following criteria restated by the Supreme Court in Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967):

> (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

In Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), the Court indicated that the first of the three criteria is to be given the greatest weight. Id. at 249, 89 S.Ct. 1030. Generally speaking, if the purpose of the new rule is to correct flaws in, or guard the integrity of the fact-finding process at trial, then the decision should be given retroactive application. Stovall v. Denno, *supra*, 388 U.S. at 298, 87 S. Ct. 1967. Thus, if the new rule substantially reduces the likelihood that an innocent person will be convicted, it should be given full retroactivity. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Here, defendant pleaded guilty on the basis of conduct which is *now* constitutionally protected. There would have been no conviction had he been able to exercise his fifth amendment privilege. The new rule goes to the very foundation of guilt. Accordingly, "the integrity of the process" will best be served in the instant case by giving retroactive application to *Marchetti* and *Grosso*.

The second prong of the test, "reliance" by law enforcement authorities, is not a substantial burden in this case. *Marchetti* and *Grosso* were decided in 1968. In the intervening years between 1968 and the present, numerous federal courts have given these rulings full retroactive application. These decisions, as well as Supreme Court decisions in the area, should have operated as a warning device to all authorities in all circuits. Furthermore, the *Marchetti* and *Grosso* decisions do not affect the use of gambling tax returns in other criminal prosecutions, Mackey v. United States, *supra*. The ramifications, therefore, of retroactive application of the rulings will be minimal. As the Court of Appeals for this circuit in United States ex rel. Allison v. State of New Jersey, 418 F.2d 332, 341 n. 20 (3rd Cir. 1969) stated:

> A decision announcing a rule clearly foreshadowed in previous cases should not be denied retroactivity where reliance on a contrary rule is not justified.

Finally, the effect of holding *Marchetti* retroactive on the administration of justice must be considered. In Stovall v. Denno, *supra*, the Court translated this

"effect" into the necessity for hearings or retrials which would disrupt the processing of criminal calendars. 388 U.S. at 300, 87 S.Ct. 1967. In this instance no such problem exists because *Marchetti* held the fifth amendment privilege to be a complete defense to prosecution. The Court stated:

> those who properly assert the constitutional privilege as to these provisions may not be criminally punished for failure to comply with their requirements. 390 U.S. at 61, 88 S.Ct. at 709.

Therefore, there will be no need for an evidentiary hearing or retrial of this defendant or any other. Mere assertion of the privilege eradicates any authority the Government might have to prosecute. Additionally, the very nature of the crime is a failure to provide required information. The *Marchetti* and *Grosso* decisions indicate that this failure is now constitutionally protected.

Accordingly, this court concludes that the *Marchetti* and *Grosso* decisions are to be given retroactive application. The motion to vacate the judgment of conviction is granted.

Counsel shall submit an appropriate order.